IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

THOMAS R. MILLER
    Plaintiff,

v.

DR. MAGGIE BAILEY, CMS,
FIRST CORRECTIONAL
MEDICAL
    Defendant.

Civil Docket 1:06-349(GMS)

<u>Plaintiff comes forth Present Motion to Amend Complaint Before this Honorable Court, Fed Rule 15.1.</u>



FILED
JUL 10 2007
RG scann
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Date: July 7, 2007

Thomas R. Miller
Thomas R. Miller
DCC 1181 Paddock Rd
Smyrna, DE, 19977

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

THOMAS R. MILLER,
  Plaintiff,

v.

DR. MAGGIE BAILEY, CMS,
FIRST CORRECTIONAL-
MEDICAL,
  Defendant.

Civil Docket 1:06-349 (GMS)

## RULE 15.1. MOTION TO AMEND

WARDEN THOMAS CARROLL, AND TOP OFFICIALS OF DCC, TO THE ORIGINAL COMPLAINT, AS OVERSEERS OF THE ADMINISTRATION WITH WILLFUL KNOWLEDGE OF CONTRACTORS FIRST CORRECTIONAL MEDICAL [FCM] CORRECTIONAL MEDICAL SERVICE [CMS] THEIR RECORD, POLICIES, AND CONTRACT TO BEING ACCREDITED FOR PROVIDING ADEQUATE MEDICAL CARE IN THEIR PRISON SYSTEM, WHEN THEY ALREADY HAVE KNOWLEDGE FROM THE HISTORY OF BOTH CONTRACTORS [FCM] [CMS] SERVICES THEY WERE PROVIDING WAS BELOW STANDARD AND INADEQUATE MEDICAL CARE, TO DELAWARE PRISONERS THATS SET WITHIN THEIR CONTRACT AND POLICIES, THIS IS BREACH OF CONTRACT FROM BOTH VENDORS CONTRACTORS, WARDEN THOMAS CARROLL, AND TOP OFFICIALS OF DCC, ASWELL AS CONSPIRACY AND FRAUD, WHICH MAKES ALL DEFENDANTS LIABLE.

Plaintiff, now comes and hold defendants Warden Thomas Carroll and Top officials of Delaware Correctional Center are thee overseers of the prison system, responsible. These Defendants were already aware of the deplorable medical care service provided by DDOC's medical vendors, they have been accredited since 1986 by the NCCHC, However, defendants neglected to say the accrediation is meaningless and measure only whether a prison system is physically capable of providing adequate Medical Care, not whether they actually do. (Quoted) in the 2005 investigation of the privatized Medical Services in Delaware Kill and Maim for below standard of inadequate medical care to Delaware prisoners. Taylor does admit that deficiencies exist, but he defends the delivery of health care to DDOC prisoners because of DDOC accrediation by NCCHC since 1986. Yet, Taylor refuses to release the latest NCCHC audit, which found such serious problems it resulted in FMC's contract being terminated, on the basis it's not a public document. DDOC spokeswoman Elizabeth Welch in response to a Delaware State News Request for that audit, "cited" a statue that specifically prohibits the disclosure of documents such as the audit. Therefore, the DOC is denying your request." From Year 2000-02 [FMC] First Medical Correctional outbid (CMS) Correctional Medical Services by about $200,000. In July 04 (DDOC) raised questions about "deficiencies" in [FMC] performance. After an audit by the National Commission on Correctional Health Care [NCCHC] revealed deep rooted problems that couldn't be quickly corrected, it was agreed in March 2005 by [FMC] and DDOC to terminate FMC's contract effective July 30, 05. However, CMS is on it's third round of caring for DDOC prisoners. It held the DDOC health care contract from 1985-96, and again from 2000-02. DDOC, however, is so confident in its contracted health care Provider that it allows CMS to oversee itself. Even when a Prisoner dies, an internal "Peer review" is led by the contract vendor. The entire process is confidental done, are sent straight to CMS.

(3)

A physician group, The Medical Society of Delaware Prison Health Committee, may be asked to investigate a prisoner death. But their investigation can't order corrective actions. DDOC defends CMS contract authority to oversee its delivery of health care. "Every vendor, medical vendor that we have chosen has met that criteria," says Richard Siefert, DDOC's deputy bureau chief of prisons part of that is not only do they have the certification in order to get the certification, they have to have a history proven that they provide the services within medical industry acceptable best practices. So, from my perspective, the selection of the vendor is the guarantee that these people are capable of delivering those things that they say they can."
Attorney Stephen Hampton questions Siefert's rationale. "What he's saying is they're a good vendor, because if they weren't a good vendor the (state) wouldn't of hired them." Said Hampton. It's absolutely crazy? Right here Defendants were aware, and have knowledge that the (2) two independent contractors the State of Delaware hired did not meet the criteria of delivering adequate medical care to Delaware prisoners either time. And having knowledge that both contractors carried out their policies of adequate medical care, that was set before defendants in their contract, not deplorable below standard services inadequate medical care that these (2) independ- -ent contractors delivered.

CONTRACTOR — one who is a party to a contract, also one who contracts to do the work for another. A independant Contractor is one who makes an agreement with another to do a piece of work, retaining in himself control of the means, method and manner of producing the result to be accomplished, neither party having the right to terminate the contract will." 45 N.E. 2d 342, 345.

CONTRACT — a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. 1 Williston, Contracts § 1 (4th ed. 1990).

The essentials of a valid contract are "parties competent to contract, a proper subject matter, consideration, mutuality of agreement, and mutually of obligation" 286 N.W. 844, 846; a transaction involving two or more individuals whereby each becomes obligated to the other, with reciprocal rights to demand performance of what is promised by each respectively." 282 P.2d 1084, 1088.

## BREACH OF CONTRACT COUNT 1

Defendants Warden Thomas Carroll, and Top officials of DCC are liable in their individual and official capacity in this complaint.
For having knowledge policies, documents within the contract to provide adequate Medical services (an agreement) which Delaware Prisoners never recieved. This is inadequate medical care (Quoted) The new contract with CMS is worth 25.9 million. Sen. Charles L. Copeland Criticised that contract and the process leading to it. Both Contractors (FCM) First medical Correctional (CMS) Correctional Medical Services failed to perform the fullfillment a promise in their contract an agreement thats written and duties to be carried out that set in contract The investigation proved that the contractors medical service was not up to standard, and was giving inadequate Medical care to Delaware Prisoners. They were below in their obligation, and performance that was agreed upon in their contract to the state of Delaware prison Systems, and defendants in this Amended Complaint was aware of the inadequacies and Flawed Medical services they were recieving from both contractors, their obligations did not meet their Contract, This is Breach of Contract a failure to exercise that Care. (Quoted) However, CMS is on its third round of caring for DDOC Prisoners. It held the DDOC health care contract from 1985-96, and again from 2000-02. DDOC, however, is so confident in its contracted health care provider that it allows CMS to oversee itself. Even when a prisoner dies an internal "Peer review" is led by the contract vendor. The entire process is confidental done,

(3)

Instead of getting competitive bids from different medical providers, the administration gave a long-term no bid contract to a single provider, and whats worse paid 9 million more than to the previous provider," says Copeland. <u>Lack of Oversight</u> Because prisoners have no health care options other than that provided by prison authorities, for their only way to have the adequacy of that care examined is to file grievances. That option however, is of no consequences in DDOC. Delaware prisoners file about 500 grievances a month complaining about the quality of their healthcare. For a system that holds only 6,600 prisoners, it seems that many complaints would sound an alarm to prison administrators that something is amiss. On the other hand defendants in this amended complaint already have knowledge of the breach of contract of contracted policies thats set before them, and still does not acknowledge any inadeq--acies to the inadequate medical care their providing. This is an <u>Breach of Contract</u> - a party's failure to perform some contracted for or agreed-upon act, or his failure to comply with a duty imposed by law which is owed to another or to society. <u>682 F.2d 883, 885.</u> <u>Breach of duty</u> - a failure to perform a duty owed to another or to society; a failure to exercise that care which a reasonable man would exercise under similar circumstances. <u>56 A. 489, 500.</u> <u>Material Breach</u> - A material breach destroys the value of the contract and gives rise to an action for breach of contract.

<u>Conspiracy Count 2</u> 11 Del. C. §513 in the first degree

All defendants in this complaint did conspire of knowing the history of both contractors that their medical services were inadequate, below medical standards thats required under Delaware law, but still oversee this very same contract being delivered to their prisons. In doing so did and still violate Title 11 §513 and are being held liable in their individual and official capacity in this complaint. All defendants do have an affirmative role in the conspiracy

(4)

(Quoted) thereby cited DDOC spokeswoman Elizabeth Welch, in Response to a Delaware State News request for that audit "cited" a statue that specifically prohibits the disclosure of documents such as the audit, Therefore the DOC is denying your request." Beings the defendants Positions are the over-seers of the prison system they had Knowledge of it. Conspirator- one involved in a conspiracy, one who acts with another, or others, in furtherance of an unlawful transaction." "It is not necessary that all of the conspirators either meet together or agree simultaneously --- It is not necessary that each member of a conspiracy know the exact part which every other participant is playing, Nor is it necessary in order to be bound by the acts of his associates that each member of a conspiracy shall know all the other participants therein.

## Fraud Count 3

All defendants in this complaint are held liable in their individual and official capacity in this complaint.
(Quoted) Of, Course, sending prisoners out for care at a community hospital greatly reduces CMS's profit. I have been in many settings where I have seen medical vendors rewarded for not providing care." Delaying or denying services will make a lot of money for the company when the state negotiates these contracts, that's likely to happen?

### Charging Prisoners
(Quoted)
In the last year, numerous current and former DDOC prisoners have recieved bills for medical treatment they recieved while in DDOC's custody. Those bills came from private vendors that performed contract worked for FCM. Apparently, because FCM has been delinquent paying it bills, the vendors began billing prisoners. FCM owes St. Francis Hospital close to $1 million. A Kent General Hospital spokesperson confirmed FCM owes them money too, but not as much as St. Francis. The result is that CMS is now having diffulculty contracting with these same community medical providers. Although he is still in prison, Ed Brittingham recieved a bill for about $2,100 for the massive doses of antibiotics prescribed in the hospital to treat a flesh eating bacteria.

(5)

Don Bates, serving life for murder, recieved a bill for $76 from a radiology firm for two chest X-rays he recieved in 2003. Lots of inmates have recieved these bills," Bates wrote in a letter to the News Journal. A fitting question was raised by Brittingham common-law wife. "What happened to all the millions of dollars the state paid FCM to take care of Ed and the other inmates, asked Lee McMillion. Where did all that money go?

## A MOUNTAIN OF LAWSUITS

Since 1986, over 300 cases have been filed in Delaware Federal Courts against the DDOC's medical vendors. Most of those cases were filed Pro se. Many were dismissed on Summary Judgement for lack of evidence to support the claims, failing to file paperwork, or the Courts could not locate the prisoners. It is virtually impossible to win a medical case in Court without expert testimony to show both causation and appropriate standards of care. Medical experts cost thousand of dollars to retain and are typically beyond the reach of most pro se prisoners. Some cases however, results in favorable judgements on behalf of prisoners for instance, CMS agreed in October 2005 to pay an undisclosed amount to the family of Anthony Pierce for the gross negligence, (Cont on pg 7)

6

## Cont. A Mountain of lawsuits

that resulted in his death. CMS is no stranger to lawsuits alleging it was deliberate indifference to prisoner's serious medical needs. In fact, such suits seem to be part of the business model. In the Eastern District of Arkansas, CMS has been named as a party in about 200 lawsuits. The last Arkansas suit against comes after it's physician, Dr. Olabode Olumofin, prescribed ineffective antibiotics to treat a bacteria that caused prisoner William Jobes' lungs to fill with infected pus. The suit alleges the lab reports "were blatantly and willfully disregarded" by Olumfin who "wholly failed to take any action in response to save Bill Jobes' life." Moreover, it is contended that the failure to send Jobes to a hospital sooner than four days after he entered the prison infirmary cost him his life. Of course, sending prisoners out for care at a community hospitals greatly reduces CMS' profit. "I have been in many settings where I have seen medical vendors rewarded for not providing care," says Dr. Cohen. "When care is tied to the profit of these companies, there will be serious problems on care in specific sensitive areas: specialty consultation and hospitalization. Delaying or denying services will make a lot of money for the company. When the state negotiates these contracts, that's likely to happen." CMS like legal experts nationwide, know that prisoners have an extremely difficult time procuring counsel. Absent competent counsel, most prisoners fail in the legal arena. "It is certainly very hard for prisoners alone," says Gouri Bhat of the ACLU's National Prison Project. Knowing that, why should CMS worry about the odds successful suit while making millions denying or delaying care? Typically private medical companies are paid a flat per diem rate for each prisoner in a system. That rate supposes a basic level of care for all prisoners and the companies profits. When the company skimps on medical staffing, doesn't provide expensive care, etc, it maximizes its profits as every penny not spent

(7)

Defendants in this complaint behind their positions are circling the wagons, like the peoples thats in a higher position, as they are in the same system (Delaware), of not being truthful, keeping documents from the publics view, from both medical providers, where (FMC) was liable for inadequate medical care, (CMS) is profiting by charging inmates for sick call visits, and medication, along paying partis off for lawsuits whom file towards the company, on cruel and unusual punishment gross, negligence behind a flawed failed medical provider. Everybody wins when adequate medical care and service are not performed by these companys. The companies makes and profit millions, and the state saves millions, and the prisoners in the system loses out on adequate medical treatment and care, aswell as their health and life. Defendants can be held liable for fraud, along with both (FMC) and (CMS). Fraud-intentional deception resulting in injury to another IT" usually consists of a misrepresentation, concealment, or non-disclosure of a material fact, or at least misleading conduct, devices or contrivance." <u>234 F. Supp. 201, 203.</u>

<u>Plaintiff object to all defending parties!</u>
<u>STATUE DEPARTMENT OF CORRECTION</u>
<u>TITLE 11 § 6536</u>

§ 6536. Medical care.
(a) The Department shall promulgate reasonable standards, and shall establish reasonable health, medical and dental services, for each institution, including preventive, diagnostic and therapeutic measures on both an out-patient and hospital basis for all types of patients.

The nature and extent of such medical and dental services shall be determined by the commissioner of Correction in consultation with the chief medical officer of the Department.

The Department may authorize, under regulations, inmates to be taken, with or without guard, to a medical institution or facility outside the institution.

(8)

## TITLE II 6517. DUTIES AND RESPONSIBILITIES OF COMMISSIONER

(13) Administering the medical/treatment services contract, or appointing a designee to administer the medical/treatment contract. 11 Del. C. 1953 § 6517; 54 Del. Laws, C. 349, §1; 70 Del. Laws, C. 186, §1; 73 Del. Laws, C. 320, §1).

Defendants in the complaint, and the State of Delaware, violated there very own statue-law.

Liable - to be responsible for; to be obligated in law.

Wherefore, Plaintiff respectfully request the Honorable Court to grant his Amended Complaint against Defendants Warden Thomas Carroll, and top officials of DCC TO the original complaint.

Date: July 7, 2007

Thomas R. Miller
Thomas R. Miller
DCC, 1181 Paddock Rd
Smyrna, De 19977

(9)

## CERTIFICATE OF SERVICE

I, Thomas R. Miller, hereby certify that on this date, I served on parties below in the manner indicated, copies of Amended Complaint.

TO: Honorable Gregory Sleet
United States District Court
844 N. King Street, Lockbox 18
Wilmington, Delaware 19801-3570

TO: James E. Drnec, Esquire (#3789)
711 King Street
Wilmington, Delaware 19801
302.658.4265
Attorneys for Defendant CMS

TO: First Correctional Medical
6861 North Oracle Rd
Tucson, AZ 85704

Date: July 7, 2007

I/M Thomas R. Miller
SBI# 144108   UNIT Bldg 23 B-L-4
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

TO: Honorable Gregory Sleet
United States District Court
844 N. King Street Lockbox 18
Wilmington, Delaware
19801-3570



"Legal Mail"