# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS R. MILLER, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 06-349 GMS |
| | : | |
| v. | : | |
| | : | |
| DR. MAGGIE BAILEY, CMS, and | : | |
| FIRST CORRECTIONAL | : | |
| MEDICAL, INC., | : | |
| | : | |
| Defendants. | : | |

### COMPENDIUM OF CASES CITED IN DEFENDANT
### CMS'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

James E. Drnec, Esquire (#3789)
BALICK & BALICK LLC
711 King Street
Wilmington, Delaware 19801
302-658-4265
Attorneys for Defendant CMS

# TABLE OF CONTENTS

Anderson v. Airco, Inc., 2004 WL 2827887, at *2-3 (Del.Super.) ……………………..…..1

Bove v. Goldenberg, 2007 WL 446014 (Del.Super. February 07, 2007) (citing
    Super.Ct.Civ.R. 9(b) …………………………………………………………………….2

Brooks-McCollum v. Shareef,  2006 WL 3587246 (Del.Super., November 1, 2006)…………3

Morris v. First Union National Bank, 2002 WL 47961, at *6 (E.D.Pa.2002) ………………4

Southwest Materials Handling Co. v. Nissan Motor Co., Ltd., 2000 WL 1664160, at *6
    (N.D.Tex.2000) …………………………………………………………………………....5

Superior Court of Delaware.

Richard V. ANDERSON, et. ux. Plaintiffs,

v.

AIRCO, INC., et al. Defendants.

No. Civ.A. 02C-12-091HDR.

Submitted Sept. 24, 2004.

Decided Nov. 30, 2004.

Upon Plaintiffs' Motion for Relief from Judgment Denied.

Upon Reargument of Defendants' Motion to Dismiss Counts 6 and 7 Granted As to Count 6 Denied as to Count 7 Stay of Discovery Dissolved.

Robert Jacobs, and David A. Arndt, Jacobs & Crumplar, P.A., Wilmington, Delaware, for Plaintiffs.

Matthew P. Donelson, and Joel M. Doner, Wilbraham, Lawler & Buba, P.C., Wilmington, Delaware for Defendant Airco, Inc.

James W. Semple, Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware for Defendant Air Products & Chemicals, Inc.

Albert Manwaring, IV, and Joseph S. Naylor, Pepper Hamilton, LLP, Wilmington, Delaware for Defendant Allied Signal, Inc.

John L. Reed, and Gary W. Lipkin, Duane Morris, Wilmington, Delaware for Defendants American Chemistry Council, B.F. Goodrich Corp., Conoco Inc., The Dow Chemical Company, Epec Polymers Inc., ICI Americas, Inc., PPG Industries, Inc., Pactiv Corp., PolyOne Corporation, Shell Oil Co., Tenneco Inc., Tenneco Automotive, Inc., Union Carbide Corp., Uniroyal Inc. and Zeneca, Inc.

Michael P. Kelly, McCarter & English, LLP, Wilmington, Delaware for Defendant Bayer CropScience Inc.

Randall E. Robbins, Ashby & Geddes, Wilmington, Delaware for Defendant Borden Chemical, Inc.

Adam C. Balick, Balick & Balick, Wilmington, Delaware for Defendant Bridgestone/Firestone, Inc.

John D. Balaguer, and William L. Doerler, White & Williams, Wilmington, Delaware for Defendants Chevron USA Inc., Gulf Oil Corp. and Monsanto Company.

Frederick L. Cottrell, II, and Alyssa Schwartz, Richards, Layton & Finger P.A., Wilmington, Delaware for Defendant Occidental Oxychem.

Jeffrey L. Moyer, and Anne Shea Gaza, Richards, Layton & Finger P . A., Wilmington, Delaware for Defendant Formosa Plastics Corporation.

Somers S. Price, Jr., and W. Harding Drane, Jr., Potter, Anderson & Corroon LLP, Wilmington, Delaware for Defendant Gencorp and Olin Corp.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware for Defendant Georgia-Pacific Corp.

Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware for Defendant The Goodyear Tire & Rubber Company.

James P. Hall, Phillips, Goldman & Spence, Wilmington, Delaware for Defendant Society of Plastics Industry, Inc.

Richard D. Allen, Morris, Nichols, Arsht & Tunnell, for Defendant Westlake Vinyls Inc.

David C. Malatesta, Jr., Kent and McBride, P.C., Wilmington, Delaware, for Defendant Whittaker Corporation.

OPINION

RIDGELY, J.FN*
FN* Sitting by Special Designation pursuant to Del. Const. Art. IV § 13(2).
*1 On June 30, 2004 this Court dismissed the Plaintiffs' fraud claims, among others, but left intact their claims of negligence, aiding and abetting, and civil conspiracy.FN1 The Court then granted Consolidated Defendants' FN2 motion for reargument in part, reserving decision on the issue of whether negligence may properly underlie a claim of civil conspiracy.FN3 In response, the Andersons filed a motion for relief from judgment, asserting that the Court's June 30 decision erroneously dismissed the fraud claims as applied to all defendants.FN4
FN1. Anderson v. Airco, Inc., 2004 Del.Super. LEXIS 210. Given the well-documented history of this litigation, a full recitation of the facts is unnecessary.
FN2. Consolidated Defendants include the American Chemistry Council, Conoco, Inc., B.F. Goodrich Company, ICI Americas, Inc., PolyOne Corporation, PPG Industries, Inc., Shell Oil Company, Uniroyal, Inc., and Zeneca, Inc. All other Supplier and Non-Supplier Defendants, as defined in the June 30 decision, have filed joinders to the motion for reargument.
FN3. Anderson v. Airco, Inc., 2004 Del.Super. LEXIS 270.
FN4. Pl. Mot. for Relief from J., E-File 4164471 (September 3, 2004) (filed pursuant to Super Ct. Civ. R. 60(b)).
The Court reaffirms its dismissal of Counts Four and Five because the Plaintiffs' have failed to raise any issues warranting reexamination of these fraud claims. I conclude that the conspiracy claim must be dismissed because the tort of negligence cannot provide a foundation for conspiracy. However, aiding and abetting is a distinct cause of action from conspiracy and Plaintiffs have stated a cause of action under that theory of liability.

I. Standard of Review

Under Superior Court Civil Rule 59, parties may make a motion for reargument within five days of the filing of the Court's decision.FN5 When considering whether to reopen an issue previously decided, the Court must consider whether it overlooked a precedent or legal principle that would have controlling effect, or that it is has misapprehended the law or facts such as would affect the outcome of the decision.FN6 A motion for reargument "properly seeks only a reexamination of the facts in record at the time of decision or the law as it applies to those facts." FN7 It is not intended, however, "to rehash the arguments already decided." FN8
FN5. Super. Ct. Civ. R. 59(e).
FN6. Gass v. Truax, 2002 Del.Super. LEXIS 442.
FN7. Merendino v. Kupcha, 2002 Del.Super. LEXIS 520, at *8.
FN8. McElroy v. Shell Petroleum, Inc., 1992 Del. LEXIS 449, at *2.

II. Motion for Relief from Judgment

Because the disposition of the Plaintiffs' motion for relief from judgment affects the

viability of their conspiracy claim, the Court will address this motion first. Plaintiffs' contend that the Court failed to distinguish between the Supplier and Non-Supplier Defendants in dismissing the fraud claims. According to Plaintiffs, the order which dismissed Counts Four and Five incorrectly applied to all defendants in the litigation.

The rationale and analysis of the Court's decision of June 30, 2004 applies equally to both the Supplier Defendants and the Non-Supplier Defendants. Counts Four and Five fail to allege how any of the defendants intended Anderson to act or refrain from acting and the Counts do not indicate any reliance on a specific representation. The Andersons' fraud narrative recounts in detail VCM-related actions allegedly taken by many, but not all, defendants and other industry representatives from the 1950s on, including alleged agreements to make false statements, conduct fraudulent medical testing and misleading scientific studies, and otherwise conceal the ill effects of VCM exposure. According to the Andersons, these actions "caused inaccurate and insufficient information regarding [VCM] to be available[,] and but for this, [Anderson] would not have been injured." FN9
FN9. Pl. Compl., E-File 3029206, ¶ 76, at 42.
*2 Count Five alleges efforts by a sampling of defendants to distort the findings of an industry-sponsored VCM study and accuses these same defendants of failing to order additional testing. As a result, based on this allegedly incomplete and fraudulent information, Anderson claims he "relied on the information available to him when he worked at the [plant] and as a result of the misinformation and suppression by the defendants, he was injured." FN10
FN10. Id. ¶ 91, at 48.
Neither count describes what specific representations that Defendants, whether Supplier or Non-Supplier, intended Anderson to act on. The Andersons, moreover, allege only a general reliance on unspecified, industry-generated information that was filtered through the trade for a period encompassing more than five decades. Although the complaint's chronology of events is historically detailed, the time, place, and contents of the alleged misrepresentations, as they relate to Anderson, are left to conjecture. Counts Four and Five, which do not distinguish between suppliers and non-suppliers, fail to state a cause of action for fraud with particularity against all defendants. Plaintiffs' motion for relief from judgement must be denied.

III. Civil Conspiracy and Aiding-Abetting Claims

Accountability for concerted tortious action stems from common-law principles of vicarious liability. "All persons who acted in concert to commit a trespass," for example, "were held liable for the entire result" when conducted "in pursuance of a common design." FN11 Two variations have developed: (1) conspiracy, or concerted action by agreement; and (2) aiding and abetting, or concerted action by substantial assistance.FN12
FN11. Prosser, Law of Torts § 46, at 291 (4th ed.1971).
FN12. Halberstam v. Welch, 705 F.2d 472, 477 (D.C.Cir.1983).
The second Restatement of Torts reflects this distinction:

For harm resulting to a third person from the tortious conduct of another, one is subject to

liability if he:

(a) does a tortious act in concert with the other or pursuant to a common design with him; or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.FN13
FN13. Restatement (Second) of Torts § 876 (1979) [hereinafter Restatement].
The "common design" in subsection (a) and "substantial assistance" in subsection (b) reflect the conceptual distinction between conspiring to perform a wrongful act and aiding in its commission. Put another way:

The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct.FN14
FN14. Halberstam, 705 F.2d at 478.
With these variations in mind, the Court turns to the Andersons' civil conspiracy and aiding-abetting claims.

A. Civil Conspiracy

*3 Consistent with the language of Restatement Section 876(a), civil conspiracy is defined in Delaware as the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage.FN15 It is not an independent cause of action.FN16 "The gravamen [sic] of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy." FN17 An allegation of conspiracy is important for two purposes: "To hold responsible in damages persons other than those who actually committed the tort relied on[, and to] increase the measure of damages because of the deliberate and intentional character of the act alleged to have been committed." FN18 An actionable tort must accompany any conspiracy in order for there to be a recovery. FN19
FN15. Nutt v. A.C. & S. Co., Inc., 517 A.2d 690 (Del.Super.Ct.1986). In addition, civil conspiracy is recognized in the fiduciary duty context, see, e.g., Gilbert v. El Paso Co., 490 A.2d 1050, 1057 (Del. Ch.1984), and is also a ground for asserting personal jurisdiction over certain out-of-state defendants. See, e.g., Mktg. Prods. Mgmt. v. Healthandbeautydirect.com, Inc., 2004 Del.Super. LEXIS 26.
FN16. Connolly v. Labowitz, 519 A.2d 138, 143 (Del.Super.Ct.1986); Phoenix Canada Oil Co. v. Texaco, Inc., 560 F.Supp. 1372, 1388 (D.Del.1983). As far back as early eighteenth-century England, civil conspiracy has been considered an auxiliary pleading

device, rather than a primary cause of action. See Jones v. Gwynn, 10 Mod. 148, 214 (K.B.1713).

FN17. McLaughlin v. Copeland, 455 F.Supp. 749, 752 (D.Del.1978), aff'd 595 F.2d 1213 (3d Cir.1979). See also Levin v. Upper Makefield Twp., 90 Fed. Appx. 653, 667 (3d Cir.2004) ("[T]he established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."), citing In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir.1999) (citations and internal quotations omitted).

FN18. Diver v. Miller, 148 A. 291, 292 (Del.1929). A third may be the psychological effect a claim of conspiracy imprints on the trier of fact. See Thomas J. Leach, Civil Conspiracy: What's the Use?, 54 U. Miami L.Rev. 1, 14 (1999) ("It ... can be of great use to a plaintiff to argue the themes of conspiracy: the secret cabals, the clandestine plottings, the combination of concealed forces aimed at a single victim. It is an effective variant on the David versus Goliath theme.").

FN19. See Beck v. Prupis, 529 U.S. 494, 501-502 (2000) (surveying American civil conspiracy jurisprudence). See also Restatement § 876, cmt. a(b) ("The mere common plan, design[,] or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution.") (emphasis added); Prosser, Law of Torts § 46 ("It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.") (footnotes omitted); Cohen v. Bowdoin, 288 A.2d 106, 110 (Me.1972) ("Conspiracy fails as the basis for the imposition of civil liability absent the actual commission of some independently recognized tort; and when such separate tort has been committed, it is that tort, and not the fact of combination, which is the foundation of the civil liability.") (quotation marks omitted); Earp v. Detroit, 167 N.W.2d 841, 845 (1969) ("Recovery may be had from parties on the theory of concerted action as long as the elements of the separate and actionable tort are properly proved"); Mills v. Hansell, 378 F.2d 53 (5th Cir.1967) (per curiam) (affirming dismissal of conspiracy to defraud claim because no defendant committed an actionable tort); J. & C. Ornamental Iron Co. v. Watkins, 152 S.E.2d 613, 615 (Ga.App.1966) ("[The plaintiff] must allege all the elements of a cause of action for the tort the same as would be required if there were no allegation of a conspiracy"); Lesperance v. North American Aviation Inc., 217 Cal.App.2d 336, 345 (Cal.App.1963) ("Conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action") (internal quotation marks omitted); Middlesex Concrete Products & Excavating Corp. v. Carteret Indus. Assn., 181 A.2d 774, 779 (N.J.1962) ("[A] conspiracy cannot be made the subject of a civil action unless something has been done which, absent the conspiracy, would give a right of action"); Chapman v. Pollock, 148 F.Supp. 769, 772 (W .D. Mo.1957) (holding that a plaintiff who charged the defendants with "conspiring to perpetrate an unlawful purpose" could not recover because the defendants committed no unlawful act); Olmsted, Inc. v. Maryland Casualty Co., 253 N.W. 804 (Iowa 1934) ("[A] conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of

action"); Adler v. Fenton, 65 U.S. 407 (1861) ("The act must be tortious, and there must be consequent damage.").

A review of some of the caselaw sets the foundation for my conclusion that negligence cannot be the basis for a conspiracy claim. In Nicolet v. Nutt, several employees of a Delaware industrial plant brought a claim of fraudulent concealment against various manufacturers after sustaining asbestos-related injuries.FN20 Defendant Nicolet moved for summary judgment, contending that Nutt's claims of conspiracy, as framed, were unsustainable as a matter of law.FN21 After the Superior Court denied Nicolet's motion, the manufacturer filed an interlocutory appeal. The Supreme Court characterized the question for decision as follows:

FN20. 525 A.2d 146 (Del.1987).

FN21. In re Asbestos Litig., 509 A.2d 1116 (Del.Super.Ct.1986).

The sole issue here ... is whether a cause of action exists against a party whose asbestos products did not cause the purported injury, but who allegedly conspired with other asbestos manufacturers to actively suppress and intentionally misrepresent medical evidence warning of the health hazards of asbestos.FN22

FN22. Nutt, 525 A.2d at 147.

Citing the "well-settled law of civil conspiracy," the Court affirmed, holding:

[I]f competent medical evidence as to the dangers of asbestos was intentionally misrepresented and suppressed in order to cause plaintiffs to remain ignorant thereof ... the alleged tort [fraudulent concealment] is established.FN23

FN23. Id.

Ultimately, the conspiracy in Nutt would not have been actionable if it were not based on an independent tort.FN24 The plaintiffs there accused Nicolet and others of fraudulently concealing the dangers of asbestos, a tort which, unlike other actionable variations of fraud, requires either a deliberate concealment or silence in the face of a duty to speak.FN25 In the context of fraudulent concealment, the Nicolet court was asked to decide whether Delaware's conspiracy jurisprudence was flexible enough to admit an industry-wide campaign to conceal the ill effects of asbestos. But in answering in the affirmative, the Court did not address whether fraudulent concealment, another variation of fraud, or any other intentional tort must underlie a cause of action in conspiracy.

FN24. See id. at 150.

FN25. Stephenson v. Capano Development, Inc., 462 A.2d 1069, 1074 (Del.1983).

*4 There is, however, authority for the proposition that the tort of negligence cannot provide a foundation for conspiracy. "There is no such thing as a conspiracy to commit negligence or, more precisely, to fail to exercise due care." FN26 Since conspiracy requires an agreement or understanding to commit a wrong against another, its commission necessarily "involves some mutual mental action coupled with an intent to commit the act which results in the injury." FN27 Moreover, whether its means are lawful or not, perpetrators of a civil conspiracy must act with a purpose.FN28 Subsequent decisions, however, have palliated this requirement by recognizing that knowledge of the conspiracy is sufficient to trigger liability.FN29

FN26. Ryan v. Eli Lilly & Co., 514 F.Supp. 1004, 1012 (D.S.C.1981).

FN27. Adam v. Mt. Pleasant Bank & Trust Co., 387 N.W.2d 771, 773 (Iowa 1986), citing Basic Chemicals Inc. v. Benson, 251 N.W.2d 220, 233 (Iowa 1977).

FN28. See Prosser, Law of Torts § 41 (discussing civil conspiracy's origins in criminal law as basis for its characterization as intentional tort); 16 Am.Jur. 2d Conspiracy § 51 ("[C]ivil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong and, because negligence is, by definition, not an intentional wrong, the parties cannot engage in civil conspiracy to be negligent."). But see Restatement (Second) of Torts § 876 Caveat (stating "[t]he [American Law] Institute takes no position on whether the rules stated in [the "Persons Acting in Concert" section] are applicable when the conduct of either the actor or the other is free from intent to do harm or negligence but involves strict liability for the resulting harm.") (emphasis added).

FN29. See, e.g., In re Asbestos Litig., 509 A.2d at 1120 (requiring at least "knowing participation").

Delaware courts have addressed civil conspiracy in a variety of contexts but no authority exists to support a civil conspiracy claim proceeding on the shoulders of a negligence claim.FN30 Elsewhere, it has been recognized that "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to a conspiracy." FN31 A specific intent is required. FN32

FN30. See, e.g., Ramunno v. Cawley, 705 A.2d 1029 (Del.1998) (defamation as underlying tort); Nicolet, 525 A.2d 146 (fraud); Istituto Bancario Italiano SpA v. Hunter Engineering Co., 449 A.2d 210 (Del.1982) (fraud); Davis v. W. Ctr. City Neighborhood Planning Advisory Comm., 2003 Del.Super. LEXIS 81 (defamation); Atamian v. Nemours Health Clinic, 2001 Del.Super. LEXIS 438 (dismissed for no underlying tort); Local No. 98 IBEW v. First USA, 2001 Del.Super. LEXIS 427 (assault); Lipson v. Anesthesia Servs., P.A., 790 A.2d 1261 (Del.Super.Ct.2001) (defamation, constructive discharge, and intentional interference with contractual relations); Manley v. Assocs. in Obstretrics & Gynecology, P.A., 2001 Del.Super. LEXIS 314 (breach of contract); Savor, Inc. v. FMR Corp., 2001 Del.Super. LEXIS 170 (misappropriation of trade secrets); Zerby v. Allied Signal, Inc., 2001 Del.Super. LEXIS 16 (all claims dismissed except conspiracy and aiding and abetting); Fahey-Hosey v. Capano, 1999 Del.Super. LEXIS 351 (intentional infliction of emotional distress); Diver v. Miller, 148 A. 291 (Del.Super.Ct.1929) (fraud); Tristate Courier & Carriage, Inc. v. Barryman, 2004 Del. Ch. LEXIS 43 (breach of contract); Chandler v. Ciccoricco, 2003 Del. Ch. LEXIS 47 (shareholders' suit for declaration).

FN31. In re Methyl Butyl Ether Prods. Liab. Litig., 175 F.Supp.2d 593, 634 (S.D.N.Y.2001). See also Adcock, 645 N.E.2d at 894 ("There is no such thing as accidental, inadvertent, or negligent participation in a conspiracy."), citing Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir.1988).

FN32. See Triplex Communications v. Riley, 900 S.W.2d 716, 720 (Tex.1995) ("Given the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent.").

Restatement Section 876 supports this conclusion by reading "in concert" to mean "agreement to cooperate." FN33 Although the agreement "need not be expressed in words," conspirators must still all act together to further a tortious end.FN34 "It is essential that the conduct of the actor be in itself tortious." FN35 Where one party is negligent, and where others assist in that conduct, subsection (b)'s provisions of Restatement Section 876 on aiding and abetting are applicable. However, conspiracy cannot be based on negligence under subsection (a) because subsection (b) already

provides for that factual scenario. To read negligence into subsection (a) and Delaware's common-law conspiracy jurisprudence would blur the distinctions between conspiracy and aiding and abetting, distinctions that both caselaw and the Restatement expressly isolate. I therefore conclude that the civil conspiracy claim based upon negligence must be dismissed.FN36

FN33. Restatement § 876 cmt. a(a).

FN34. Id.

FN35. Id. cmt. a(c).

FN36. See also Rodriguez v. State, 1994 WL 679731 (Del. Nov. 29, 1994) (As a matter of Delaware criminal law, one cannot commit a conspiracy to commit a crime which is defined in terms of reckless or negligent conduct.)

B. Aiding and Abetting

Whereas civil conspiracy has deep common-law roots, the concept of tortious assistance separate from an express agreement is a more recent phenomenon in the civil, non-fiduciary arena,FN37 both within and outside of Delaware. FN38 Elementally borrowed from its criminal counterpart, civil liability for aiding and abetting tortious conduct stems from the provisions of Restatement Section 876(b). Because it focuses on assistance, rather than agreement, aiding-abetting rests on a broader conceptual base,FN39 one which may overlap conspiratorial conduct, or exist independent of it.FN40 Liability for aiding and abetting requires proof of three elements: underlying tortious conduct, knowledge, and substantial assistance.FN41 Like civil conspiracy, then, liability is predicated on independent tortious action.

FN37. Aiding-abetting liability is well established under equitable principles. See, e.g., Zirn v. VLI Corp., 1989 Del. Ch. LEXIS 83, at *16 (recounting standard for stating claim of aiding and abetting a breach of fiduciary duty). See also McGowan v. Ferro, 2002 Del. Ch. LEXIS 3; Nebenzahl v. Miller, 1996 Del. Ch. LEXIS 113. The Court's present analysis of tortious concerted action is restricted to the legal, rather than equitable, aspects of vicarious liability.

FN38. See Patton v. Simone, 1992 Del.Super. LEXIS 316, at *23 n .6 ("No Delaware court has addressed liability under this section."). See also FDIC v. S. Prawer & Co., 829 F.Supp. 453, 457 (Me.1993) (commenting that in Maine, aiding-abetting liability did not exist under common law); In re Asbestos School Litig., 1991 U.S. Dist. LEXIS 10471, *34 (E. D.Pa.1991) (noting that Section 876 liability yet to be adopted by Pennsylvania courts).

FN39. In the criminal context, see Pereira v. United States, 347 U.S.1, 11 (1954) ("Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy."); Nye & Nissen v. United States, 336 U.S. 613, 620 (1949) ("And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy."); Direct Sales Co. v. United States, 319 U.S. 703, 709 (1943) ("[O]ne does not become a party to a conspiracy by aiding and abetting it ... unless he knows of the conspiracy....").

FN40. Halberstam, 705 F.2d at 478 ("Most commonly, courts have relied on evidence of assistance to the main tortfeasor to infer an agreement, and then attached the label 'civil conspiracy' to the resultant amalgam. Sometimes, although not always, the inference has been factually justified; many tort defendants have both conspired with and substantially assisted each other.").

FN41. Simone, 1992 Del.Super. LEXIS 316, at *23.

Unlike conspiracy, however, aiding-abetting liability may flow from negligent conduct. The Restatement' s comment to subsection (b) provides:

*5 [I]f the act encouraged is known to be tortious[,] it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass and when it is merely a negligent act. The rule applies whether or not the other knows his act is tortious.... FN42

FN42. Restatement § 876, cmt. b(d) (emphasis added and illustration references omitted). The comments further note the following illustration of negligent conduct:

A and B are members of a hunting party. Each of them in the presence of the other shoots across a public road at an animal, which is negligent toward persons on the road. A hits the animal. B's bullet strikes C, a traveler on the road. A is subject to liability to C.FN43

FN43. Id. Illust. 6.

In the negligence-concerted action context, knowledge is imputed to each actor by virtue of participation in the common scheme. Unlike civil conspiracy's emphasis on explicit agreement to commit a wrong, aiding-abetting liability is elastic enough to admit a common, negligent course of action. While it is "difficult to conceive of how a conspiracy could establish vicarious liability where the primary wrong is negligence, [ ] a secondary defendant could substantially aid negligent action." FN44 Accordingly, for purposes of consolidated Defendants' motion to dismiss, the Andersons have sufficiently pled a claim of aiding and abetting.

FN44. Halberstam, 705 F.2d at 478.

IV.

For these reasons I conclude that the Andersons' civil conspiracy claim in Count Six fails to state a claim as a matter of law. However, because negligence may provide a foundation for aiding-abetting liability, the Andersons have stated a cause of action upon which relief may be granted under Count Seven. Accordingly, consolidated Defendants motion to dismiss Count Six is granted and their motion to dismiss Count Seven is denied. The stay of discovery previously imposed is dissolved.

IT IS SO ORDERED.

Superior Court of Delaware,
New Castle County.
Beverly L. BOVE, Plaintiff,
v.
Leslie GOLDENBERG, Christy Hennessey, Community Legal Aid Society, Daniel Atkins,
and Marybeth Musumeci, Defendants.
C.A. No. 05C-10-134 (CHT).
Submitted: Aug. 21, 2006.
Decided: Feb. 7, 2007.

On Defendants' Motions to Dismiss.
Vincent J.X. Hedrick, II, Esquire and Beverly L. Bove, Esquire; Wilmington, DE,
Attorneys for Plaintiff Beverly Bove.
Daniel P. Bennet, Esquire and Miranda D. Clifton, Esquire, Hecker & Frabizzio,
Wilmington, DE; Attorneys for Defendant Leslie Goldenberg.
Robert K. Pearce, Esquire, Ferry Joseph & Pearce, P.A., Wilmington, DE; Attorney for
Defendant Christy Hennessey.
John A. Parkins, Jr., Esquire, and K. Tyler O'Connell, Esquire, Richards Layton & Finger,
P.A., Wilmington, DE; Attorneys for Defendants Community Legal Aid Society, Daniel
Atkins and MaryBeth Musumeci.

### OPINION AND ORDER

TOLIVER, Judge.
*1 Before the Court are motions filed by defendants Atkins, Musumeci, and Community
Legal Aid Society ("CLASI") to dismiss the complaint filed against them by the plaintiff.
Defendants Goldenberg and Hennessey have joined in those motions. In addition to
denying any wrongdoing, the defendants have raised certain affirmative defenses which
they contend bar the relief sought by the plaintiff. The matter having been briefed and
argued, that which follows is the Court's resolution of the issues so presented.

### STATEMENT OF FACTS AND NATURE OF THE PROCEEDINGS

#### The Parties

The plaintiff is a member of the bar of the Supreme Court of Delaware. During all time
relevant to this matter, the plaintiff practiced law in New Castle County, Delaware.
Defendant Goldenberg is the owner of an interpreter service for the hearing impaired
while defendant Hennessey acted as program coordinator for Independent Resources,
Inc., an advocacy group for the hearing impaired. Both are residents of and/or operate
professionally in the State of Delaware. Finally, at all times relevant to this action,
defendant CLASI employed Mr. Atkins and Ms. Musumeci, both members of the
Delaware Bar, as attorneys representing indigent members of the public.

#### The Dispute

The instant saga began when an attorney from New York contacted the plaintiff in
January 2005 seeking Delaware counsel to represent a hearing impaired couple from
New York. That couple, Larry and Patty Hampel, apparently had been injured in an auto
accident in this state. They are not parties to the instant litigation. An appointment with

the plaintiff was scheduled. Shortly thereafter, a relative of the Hempels called to inform the plaintiff that he would translate what transpired into sign language during the consultation. It appears that this sequence of events took place at some point in time during the first two weeks of January 2005.

On or about January 17, 2005, defendant Goldenberg called the plaintiff's office indicating that she would interpret for the Hampels during their meeting with the plaintiff and that the plaintiff would be responsible for paying the cost of the services that she rendered in that regard. The plaintiff advised Ms. Goldenberg that her services were not needed because a relative of the Hampels would be interpreting for the couple. On January 18, 2005, the Hampels cancelled their appointment with the plaintiff.

Two days later, on January 20, Mr. Atkins and Ms. Musumeci filed a complaint on behalf of the Hampels alleging that the plaintiff refused to hire an interpreter for the Hampels in violation of the Delaware Equal Accommodations Law.[FN1] The complaint was refiled on February 10, 2005. The plaintiff denied the charge and retained counsel to represent her before the HRC.

FN1. 6 Del. C. § 4500

The Human Relations Commission heard the matter on July 20, 2005. Ms. Goldenberg testified before the HRC panel regarding the facts surrounding the plaintiff's refusal to pay for an interpreter. In its decision dated August 25, 2005, the HRC panel found Ms. Goldenberg's testimony "inconsistent and less than credible." The HRC panel further concluded:

*2 Ms. Goldenberg did the Hampels a disservice by her own failure to effectively facilitate communications between the Hampels and the attorney's office and by jumping to a conclusion (that Ms. Bove was 'refusing to pay' for an interpreter) that was not reasonable under any version of the testimony presented, even her own. The result was that the Respondent (Ms. Bove) never had the opportunity to evaluate and respond to the Hampels' need for accommodations and the Hampels understandably thought that their need for accommodations had been properly conveyed and refused when this was not the case.[FN2]

FN2. Pl. Compl., D.I. 1, Exh. A at 15.

### The Parties' Contentions

On December 5, 2005, the plaintiff filed an amended complaint forming the basis of the instant action in this Court setting forth three counts against each defendant.[FN3] The first two causes of action alleged defamation of character and tortious interference with business relationships. The third charged each defendant with having engaged in a civil conspiracy which inured to the detriment of the plaintiff. As a result of the defendants' conduct, the plaintiff claims to have lost at least two, potential clients. In addition, she maintains that the defendants maligned her in the community at large and in the hearing impaired community in particular which in turn negatively impacts the referrals upon which her practice depends.

FN3. The complaint was initially filed on October 14, 2005.

More specifically, in Count I, the plaintiff maintains that the defendants defamed her by publishing accusations of her alleged refusal to hire an interpreter to facilitate the scheduled consultation with the Hampels. In Count II, she charges that the defendants

tortiously interfered with business relationships or expectancies when they intentionally spread misinformation which affected the viability and success of her legal practice. Finally, in Count III, the plaintiff claims that the defendants' conduct amounted to a civil conspiracy to fraudulently conceal from the Hampels and the HRC, information which would have obviated the need for a hearing before the HRC and prevented the injury to the plaintiff's reputation and practice.

The amended complaint is silent as to the exact role played by defendants Atkins and Musumeci. The only note taken of the other two individual defendants was that defendant Goldenberg informed defendant Hennessey that the plaintiff would not pay for an interpreter.[FN4] The conduct about which the plaintiff complained was otherwise without specific definition in the complaint as originally filed or subsequently amended.[FN5]

FN4. *See* Am. Compl. at ¶ 20.

FN5. Attached to the plaintiff's complaint as an exhibit are certain documents in the form of written confirmation of electronic mail ("email") or telephone messages. Those documents purportedly describe exchanges between the defendant Goldenberg, defendant Hennessey and Ms. Hemple between January 17 and March 2, 2005.

The defendants deny that they are in any way legally responsible for any of the losses the plaintiff claims to have suffered. First, they argue that any statements allegedly made by counsel were offered in connection with litigation, which would include HRC hearings. As a result, they are protected by an absolute litigation privilege and there was no defamation. Second, since the tortious interference claim is predicated on the same allegations that form the basis of the alleged defamation and is simply a recasting thereof, the defendants argue that the tortious interference claim is also barred by the same privilege. Lastly, the defendants contend that fraud which was the subject of the alleged conspiracy must be pled with particularity, and since the plaintiff's complaint contains nothing more than conclusory allegations, it fails to state a claim upon which relief can be granted and should be dismissed.

### *DISCUSSION*

*\*3* In considering a motion to dismiss for failure to state a claim under Delaware Superior Court Civil Rule 12(b)(6), this Court "must assume all well-pleaded facts in the complaint to be true."[FN6] A complaint will not be dismissed for failure to state a claim "unless it is clearly without merit, which may be a matter of law or fact."[FN7] As such, the motion will be denied "if the plaintiff may recover under any conceivable set of circumstances susceptible to proof under the complaint."[FN8] In viewing the facts, the Court must draw "all reasonable inferences in favor of the non-movant."[FN9] The facts that may be considered by the Court in deciding a motion to dismiss include documents that are "integral to the plaintiff's claim and incorporated in the complaint."[FN10]

FN6. *Read v. Carpenter,* 1995 WL 945544, Del.Super., at *1.

FN7. *Diamond State Tel. Co. v. Univ. of Del.,* 269 A.2d 52, 58 (Del.1970).

FN8. *Rinaldi v. Iomega Corp.,* 1999 WL 1442014, at *2 (Del.Super.1999).

FN9. *Id.*

FN10. *In re Santa Fe Pacific Corp. S'holder Litig.,* 669 A.2d 59, 69-70 (Del.1995).

## Defamation

For purposes of this part of this discussion, defendants Musumeci, Atkins and CLASI will be considered together but apart from defendants Hennessey and Goldenberg who will be considered individually.

### Defendants Atkins, Musumeci and CLASI

Assuming *arguendo* that each of these defendants made statements that were defamatory, the Court must, in the first instance, decide whether the plaintiff has instituted a viable claim against them in this regard. The answer is no.

First, these defendants are correct in their assertion that statements made during the HRC hearing and in the related pleadings are protected.[FN11] The plaintiff's contention that certain communications between some or all of the defendants preceded the filing of the HRC complaint and, therefore, are not protected, is without merit. In Delaware, the privilege is not confined to events occurring inside a courtroom, but extends to all communications *relating* to the litigation, including communications with witnesses and the drafting and filing of pleadings.[FN12]

FN11. *See Barker v. Huan* g, 610 A.2d 1341, 1345 (Del.1992)and *Tatro v. v. Esham,* 335 A.2d 623, 626 (Del.Super.1975).

FN12. *Sinex v. Bishop,* 2005 WL 3007805 Del.Super., at *4.

Second, the record indicates that defendants Atkins, Musumeci, and CLASI did not participate in whatever communications that took place prior to the institution of the HRC proceedings. Indeed, the plaintiff has failed, in either the initial complaint, the amendment thereto or in any supplemental filings in this matter, to establish whether these defendants said anything relative to the plaintiff. Again, the only connection between any alleged defamation and these defendants occurred in the context of the HRC proceedings, not before or after. The motion as to this cause of action as to these defendants must therefore be **granted.**

### Defendant Hennessy

A similar conclusion is warranted insofar as defendant Hennessey is concerned for much the same reasons, albeit with slightly different reasoning. Statements defendant Hennessey allegedly made leading up to or during the HRC proceedings are protected by the litigation privilege. Although the statements may have been inaccurate, they were clearly made in her role as an advocate for the hearing impaired. She was not otherwise involved in the underlying controversy in that she had no contact with the plaintiff, the Hempels or defendant Hennessey until after the appointment in question had been made and cancelled.

*4 In addition, it is the role of the Court, in the first instance, to determine whether "... a communication is capable of bearing a particular meaning, and whether that meaning is defamatory." [FN13] After reviewing the statements attributed to defendant Hennessey following the aborted appointment with the plaintiff, the Court must conclude that whatever was attributed to this defendant cannot be considered defamatory in this context. Again, it was in her role as an advocate that she sought to assist the Hempels

in pursuing what appeared to be, based upon what she was purportedly told by Defendant Goldenberg, their grievance against the plaintiff.

FN13. *Read v. Carpenter,* 1995 WL 945544 (Del.Super) at *2.

### Defendant Goldenberg

The conclusions as to the protection afforded by the litigation privilege apply with equal force to this defendant with one distinction. The privilege shield would not immunize any alleged defamation before and unrelated to any efforts to **address** the alleged grievance between the Hempels and the plaintiff. While such statements might form the basis of the controversy, they do not assist the prosecution in the litigation or aid those participating therein, and as such are not subject to the protection of the privilege.

### Tortious Interference with Business Relationships or Expectancies

The basic elements which establish a prima facie tortious interference with a business relationship in Delaware are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.[FN14] One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another.[FN15]

FN14. *Bowl-Mor Co. v. Brunswick Corp.,* 297 A.2d 61, 65 (Del. Ch.1972).

FN15. *Id.*

Unfortunately for the plaintiff, this claim is also barred by the absolute privilege to the same extent that it applied to the moving defendants in connection with the plaintiff's claim for defamation. This is so where the substantive basis for the interference claim is the functional equivalent of defamation.[FN16] However denominated, the plaintiff's claim is that the Defendants intentionally made derogatory false statements regarding her interaction with the Hempels either in pleadings filed with the HRC or in communications relating to proceedings before the HRC. To the extent that such statements were made in the course of those proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability. Therefore, the Court finds that the absolute privilege applies to bar all claims against the Defendants except as noted above.[FN17]

FN16. *Sinex,* 2005 WL 3007805 Del.Super., at *5.

FN17. *Id.*

### Civil Conspiracy

*5 It appears that the plaintiff is alleging that the defendants engaged in a civil, as opposed to a criminal, conspiracy to interrupt and/or interfere in the legal relationship that was about to be commenced between the plaintiff and the Hempels regarding a potential personal injury claim. The instant conspiracy is based upon the alleged

fraudulent concealment of "information and the truth, which have obviated the need for the [HRC] hearing and the resulting damages to [the plaintiff]...." [FN18] According to the plaintiff in her amended complaint, all that could have been avoided had the defendants not engaged in the aforementioned conspiracy and simply told the truth.

FN18. *See* Am. Compl. at ¶ 66.

To establish that such a conspiracy existed and that harm to the plaintiff resulted, it is not necessary that there be an express agreement.[FN19] What is necessary is evidence of a combination between two or more persons, followed by an unlawful act carried out in furtherance of such combination, and damages.[FN20] The Restatement takes a similar approach explaining that the conspirators' "agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." [FN21]

FN19. *Empire Fin. Servs. v. Bank of N.Y.,* 900 A.2d 92, 97 (Del.2006).

FN20. *Id.*

FN21. Restatement (Second) of Torts 876(a). *See also e.g., Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1057 (Col.1995) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 46, at 323-24 (5th ed.1984) for the proposition that an "express agreement is not necessary, and all that is required is that there be a tacit understanding...."

To establish a claim for fraud, the plaintiff must plead his or her cause of action with particularity.[FN22] This includes the "time, place and contents of the false representations." [FN23] These requirements extend to a cause of action alleging a conspiracy to commit fraud.[FN24] Any complaint which fails to so put the defendant on notice is subject to dismissal.

FN22. *See* Del.Super. Ct. Civ. R. 9(b); *Albert v. Alex Brown Mgmt. Services, Inc.,* 2005 WL 2130607 (Del. Ch. August 25, 2005).

FN23. *Browne v. Robb,* 583 A.2d 949 (Del.1990).

FN24. *Albert,* 2005 WL 2130607 at *11.

## Defendants Atkins, Musumeci & CLASI

This count fails as well to state a claim upon which relief could be granted and therefore must be dismissed as to each of the defendants with the exception of defendant Goldenberg, for two reasons. First, the Court has already ruled that any statements made by these defendants are protected by the litigation privilege. As such, they can not constitute an illegal or wrongful act and thereby form the basis of a conspiracy. And the conspiracy can not exist without the same.[FN25] Second, notwithstanding the valiant efforts by the plaintiff in this regard, the pleadings are silent as to the particulars of the fraud committed by these defendants, again, with the exception of defendant Goldenberg. And, to state that it will be supplied later is not sufficient. [FN26] Accordingly, dismissal is the only viable result.

FN25. *Ramunno v. Cawley,* 705 A.2d 1029, 1039 (Del.1998); *Dutton v. Watson,* 1994 WL 164486 Del.Super. at *3.

FN26. *Nebenzahl v. Miller,* 1996 WL 494913 Del. Ch. at *2.

This count survives only as to defendant Goldenberg and only to the extent of the misrepresentations referenced in Paragraph 20 of the Amended Complaint read in the context of Paragraphs 65 thru 67 of Count III. As noted above, those statements are not protected by the litigation privilege.

### *CONCLUSION*

For the forgoing reasons, the motions to dismiss filed on behalf of defendants Atkins, Musumeci, CLASI and Hennessey are granted. The motion to dismiss as to defendant Goldenberg is **denied** as to any statements made before and unrelated to the proceedings before the Human Relations Commission as described above. It is otherwise **granted.**

Superior Court of Delaware,
New Castle County.
Cathy D. BROOKS-McCOLLUM, Crystal McCollum and Jordan McCollum, Plaintiffs,
v.
Kenneth SHAREEF, Renford Brevett, Maudy Melville, Valerie Longhurst, Mark Martell,
Ruth Visvardis, Edward Kafader and Ferry Joseph & Pearce, Defendants.
C.A. No. 05C-12-198 MMJ.
Submitted: Oct. 12, 2006.
Decided: Nov. 1, 2006.

Cathy D. Brooks-McCollum, Crystal McCollum and Jordan McCollum, Plaintiffs, Pro Se.
<u>Jonathan L. Parshall</u>, Esquire, Murphy, Spadaro & Landon, Wilmington, Delaware,
Attorneys for Defendants Kenneth Shareef, Renford Brevett, Maudy Melville, Valerie
Longhurst, Mark Martel and Ruth Visvardis.
<u>Rick S. Miller</u>, Esquire, Ferry, Joseph & Pearce, P.A., Wilmington, Delaware.

### *MEMORANDUM OPINION*

<u>JOHNSTON</u>, J.

### *PROCEDURAL CONTEXT*

*\*1* Plaintiff Cathy Brooks-McCollum is a former officer and director of the Emerald Ridge
Service Corporation. Following a vote by the Corporation's Board of Directors to remove
Plaintiff as an officer, Plaintiff filed a complaint in the Court of Chancery on January 30,
2004. By Letter Opinion dated July 29, 2004, the Court of Chancery denied Plaintiff's
Motion to Compel Indemnification.[FN1] Plaintiff's appeals of the Court of Chancery's
decision to the Delaware Supreme Court were denied on September 30, 2004. The
Supreme Court held:

<u>FN1.</u> The Court found that the Motion to Compel Indemnification should have been
classified as a request for advancement. <u>*Brooks-McCollum v. Emerald Ridge Service*</u>
<u>*Corp., 2004 WL 1752852 (Del. Ch.)*.</u>

Ordinarily, this Court would await action by the trial court on a petitioner's application to
certify an interlocutory appeal. We do not find it necessary in this case, however,
because we find it apparent that Brooks-McCollum's application fails on its face to satisfy
the procedural or substantive requirements of <u>Supreme Court Rule 42(b)</u>. Accordingly, in
the exercise of our sound discretion, we have determined that the application should be
refused.[FN2]

<u>FN2.</u> <u>*Brooks-McCollum v. Shareef,*</u> 860 A.2d 809 (Del.2004); <u>*Brooks-McCollum v.*</u>
<u>*Shareef,*</u> 871 A.2d 1127 (Del.2004).

In response to the Court of Chancery's opinion, Plaintiff filed an action in the United
States District Court for the District of Delaware against the State of Delaware, the Court
of Chancery and the presiding Vice Chancellor. Noting that "Plaintiff Cathy Brooks-
McCollum has filed at least eight actions in four different Delaware State and Federal
courts on her underlying grievance against the Emerald Ridge Service Corporation and
its board of directors," the District Court dismissed the case for lack of subject matter
jurisdiction.[FN3]

<u>FN3.</u> <u>*Brooks-McCollum v. State of Delaware,*</u> 2005 WL 1949674 (D.Del.).

Plaintiff subsequently filed a complaint in this Court. This Court considered all submissions of the parties, including Plaintiff's letter stating that she would not be filing an amended complaint, and dismissed that action with prejudice by Orders dated June 16, 2004 and August 19, 2004. The Delaware Supreme Court affirmed this Court's dismissal, finding that Plaintiff's appeal was without merit.

On June 29, 2004, Plaintiff filed another action involving the same nucleus of operative fact in the United States District Court for the District of Delaware. The District Court dismissed the complaint for lack of federal jurisdiction. The District Court held: "Finally, the Plaintiff's attempt to assert claims under the First, Fifth, and Fourteenth Amendment [sic] do not authorize federal question jurisdiction because those Amendments apply only to state action, not action by private individuals or entities." [FN4] The District Court's dismissal was affirmed by the United States Court of Appeals for the Third Circuit.[FN5]

FN4. *See Avallone v. Wilmington Medical Center, Inc.,* 553 F.Supp. 931 (D.Del.1982).

FN5. *Brooks-McCollum v. Emerald Ridge Service Corporation,* No. 05-1264 (3d Cir., Dec. 8, 2005).

On December 22, 2005, Plaintiff Cathy Brooks-McCollum filed the instant action in the Superior Court. Defendants Edward F. Kafader, Esquire and the lawfirm of Ferry, Joseph & Pearce, P.A. have moved for dismissal pursuant to Superior Court Civil Rule 12(b)(6). Plaintiff's allegations against the moving defendants fall into four categories: (1) violation of the Delaware Lawyers' Rules of Professional Conduct; (2) violation of Plaintiff's rights guaranteed to her under the First, Ninth and Fourteenth Amendments to the United States Constitution; (3) civil conspiracy; and (4) what appears to be slander by proxy on the grounds that the moving defendants' clients refused to remove allegedly slanderous material from the website of Emerald Ridge Service Corporation.

**\*2** Defendants Kenneth Shareef, Renford Brevett, Maudy Melville, Valerie Longhurst, Mark Martell and Ruth Visvardis have moved to stay the proceedings until the pending action in the Court of Chancery is resolved.

### ANALYSIS

#### Delaware Lawyers' Rules of Professional Conduct

The Complaint alleges that Defendants Edward F. Kafader, Esquire and the lawfirm of Ferry, Joseph & Pearce, P.A. breached ethical duties established by the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The DLRPC regulate the actions of attorneys and do not apply to law firms. Further, assuming the facts in the light most favorable to the non-moving party, even if there were violations of the DLRPC, Plaintiff does not have standing to recover damages. The Preamble: A lawyer's responsibilities, provides in pertinent part:

Violation of a Rule should not give rise to a cause of action or should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek

enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

There is no basis for enforcement of a lawyer's substantive legal duties outside the framework of disciplinary proceedings. It is a fundamental constitutional principle that the Delaware Supreme Court has sole and exclusive jurisdiction over all matters affecting governance of members of the Delaware Bar.[FN6]

FN6. *In re Infotechnology, Inc., Shareholder Litigation,* 582 A.2d 215, 219-220 (Del.1990).

### First, Ninth and Fourteenth Amendments to the United States Constitution

In one of the actions filed by Plaintiff in the District Court, Plaintiff similarly claimed that the defendants had violated rights guaranteed her under the First, Fifth and Fourteenth Amendments to the United States Constitution. The District Court found these allegations to be without merit "because those Amendments apply only to state action, not action by private individuals or entities." [FN7] The United States Supreme Court repeatedly has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." [FN8] In affirming the District Court, the United States Court of Appeals for the Third Circuit held: "The defendants in this case, the board and individual directors of a private corporation, and their attorneys, do not in any way qualify as 'state actors'." [FN9]

FN7. *See Avallone v. Wilmington Medical Center, Inc.,* 553 F.Supp. 931 (D.Del.1982).

FN8. *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982).

FN9. *Brooks-McCollum v. Emerald Ridge Service Corporation,* No. 05-1264 (3d Cir., Dec. 8, 2005).

The moving defendants are private parties engaged in the private practice of law. In order to maintain a cause of action on the basis of violation of Constitutional rights, a plaintiff must demonstrate: (1) that the deprivation was caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;" and (2) that the private party "acted together with or ... obtained significant aid from State officials" or engaged in conduct "otherwise chargeable to the State." [FN10] Thus,

FN10. *Wyatt v. Cole,* 504 U.S. 158, 160-62 (1992).

*\*3* [T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because of his conduct is otherwise chargeable to the State. [FN11]

FN11. *Id.*

Plaintiff has not alleged any facts upon which the Court could find that Kafader or his lawfirm acted under color of state law.

Additionally, such claims must be made pursuant to the Civil Rights Act of 1971, as codified at 42 U.S.C. § 1983.[FN12] Plaintiff has failed to do so.

FN12. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.").

### Civil Conspiracy

Plaintiff has asserted that the moving defendants "conspired to cover up their illegal activities and all parties are aware of the violations committed by the other." A civil conspiracy is defined in Delaware as the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage. Civil conspiracy, standing alone, is not an independent cause of action. There must be some underlying actionable tort by each individual defendant in order to obtain recovery on a civil conspiracy theory. It is not the conspiracy itself, but rather the underlying wrong that must be actionable, even without the alleged conspiracy.[FN13]

FN13. _Anderson v. Airco, Inc.,_ 2004 WL 2827887, at *2-3 (Del.Super.); _Connolly v. Labowitz,_ 519 A.2d 138, 143 (Del.Super .1986); _Nutt v. A.C. & S. Co., Inc.,_ 517 A.2d 690, 694 (Del.Super .1986).

Plaintiff's complaint fails to specifically allege any independent torts committed by the moving defendants. The conspiracy allegations appear to be based upon assumptions of conspiratorial conduct. Such generalized allegations are too amorphous to constitute a cognizable claim for civil conspiracy.

### Slander by Proxy

As a threshold matter, Delaware courts do not look with favor upon suits for libel or slander.[FN14] It does not appear to be disputed that neither of the moving defendants authored any of the allegedly slanderous information. Instead, Plaintiff relies on a letter, written by Kafader, indicating that Kafader's clients would not remove any purportedly-slanderous material from the website. Plaintiff has failed to outline any instance in which the moving defendants engaged in conduct that could be construed as slanderous.

FN14. _Danias v. Fakis,_ 261 A.2d 529, 532 (Del.Super.1969).

### Defendants' Motion to Stay

Defendants Kenneth Shareef, Renford Brevett, Maudy Melville, Valerie Longhurst, Mark Martell and Ruth Visvardis have moved to stay the proceedings until the pending action in the Court of Chancery is resolved. The relevant Court of Chancery action was filed on January 30, 2004. The instant Superior Court complaint was filed almost two years later, on December 22, 2005.

The allegations in the Chancery Court action are largely duplicative of those in this Superior Court case. The underlying issues involve corporate governance and Plaintiff's entitlement to indemnification of attorneys' fees. The Court of Chancery has exclusive jurisdiction over the dispositive issues.[FN15]

FN15. 8 _Del. C._ § 225 (contested election of directors; proceedings to determine validity); 8 _Del. C._ § 145(k) (advancement of expenses or indemnification).

To the extent Plaintiff's other claims are purely legal, the Court of Chancery has concurrent jurisdiction.[FN16] It has long been the rule in Delaware that when the Superior Court and the Court of Chancery have concurrent jurisdiction, the tribunal which first acquires jurisdiction ordinarily will proceed to a final disposition of the case.[FN17] "The spirit of this ruling harmonizes with the general rule that where one court has assumed jurisdiction of a subject matter, other courts on principles of comity between courts will decline to interfere." [FN18]

FN16. _Wilmington Trust Co. v. Barry,_ 397 A.2d 135, 137 (Del.Super.1979).

FN17. _DuPont v. DuPont,_ 83 A.2d 105, 107 (Del.Super.1951).

FN18. _Flaherty v. Industrial Trust Co.,_ 178 A.2d 586, 587 (Del. Ch.1935).

*4 **THEREFORE,** the Court having found that Plaintiff has failed to state any claim upon which relief may be granted against defendants Edward F. Kafader and Ferry, Joseph & Pearce, P.A., the Motion for Dismissal pursuant to Superior Court Civil Rule 12(b)(6) of defendants Edward F. Kafader and Ferry, Joseph & Pearce, P.A. is hereby **GRANTED.** All claims in this action against Edward F. Kafader and Ferry, Joseph & Pearce, P.A. are hereby **DISMISSED WITH PREJUDICE.**

The Court having found that the pending action in the Court of Chancery filed by Plaintiff was first-filed and involves dispositive issues over which the Court of Chancery has exclusive jurisdiction, and the Court of Chancery has concurrent jurisdiction over any purely legal issues, the Motion to Stay of Defendants Kenneth Shareef, Renford Brevett, Maudy Melville, Valerie Longhurst, Mark Martell and Ruth Visvardis is hereby **GRANTED.** This Superior Court action is hereby **STAYED** until final resolution of _Brooks-McCollum v. Emerald Ridge Service Corporation,_ Civil Action No. 147-N.

**IT IS SO ORDERED.**

United States District Court, E.D. Pennsylvania.
Michael MORRIS, Plaintiff,
v.
FIRST UNION NATIONAL BANK, et al., Defendants.
No. CIV.A. 01-1953.
Jan. 14, 2002.

MEMORANDUM

Reed, S.J.

*1 *Pro se* plaintiff Michael Morris ("Morris") initiated this lawsuit by filing a motion for a temporary restraining order. After holding hearing pursuant to Federal Rule of Civil Procedure 65, this Court denied the motion filed by Morris. (Document No. 4.) Presently before this Court are two motions to dismiss filed on behalf of defendant First Union National Bank ("First Union" or "the Bank"), (Document Nos. 12 and 13), pursuant to Federal Rule of Civil Procedure 12(b)(6).[FN1] After Morris failed to respond to the pending motions, this Court issued an Order directing Morris to respond by November 19, 2001, or this Court would consider the motions as unopposed. [FN2] (Document No. 14.) Plaintiff still failed to file a response. Upon consideration of these unopposed motions, and for the reasons which follow, this Court will grant the motions to dismiss.

FN1. Wells Fargo Bank was dismissed with prejudice as a defendant from this case by stipulation. (Document No. 11.)

FN2. The clerk's file in this action indicates that plaintiff received a copy of the Order issued by the Court directing plaintiff to respond to the pending motions by November 19, 2001.

I. Background

In denying the motion of plaintiff for a temporary restraining order, this Court found that Morris had failed to show to the satisfaction of the Court that he would likely prevail at trial on either the jurisdictional merits or substantive merits of the case, and that plaintiff presented to the Court vague, inconsistent, and unreliable proffers of evidence and arguments. The complaint here filed is plagued by the same cloudiness.

It seems that plaintiff obtained a mortgage from First Union and that he maintained several personal and business accounts with the Bank. (Compl.¶ 6.) Plaintiff asserts that when he opened these accounts he was informed that no information concerning these accounts could be provided to anyone other than plaintiff without a subpoena, court order or authorization by plaintiff. ( *Id.* ¶ ¶ 7-8.) Morris alleges that First Union and unnamed John Does "fraudulently disclosed certain information" to unnamed third parties concerning his account without his authorization or an appropriate court order. ( *Id.* ¶ 9.) Plaintiff asserts that as a result of this alleged misconduct, "third parties were able to misrepresent" plaintiff's accounts, ( *id.* ¶ 11), and as a result of this misrepresentation, he suffered a foreclosure on the mortgage, the loss of his employment, and "other damages." ( *Id.* ¶ 12.) Plaintiff brings forth the following nine counts: (1) Fraud, (2) Breach of Fiduciary Duty, (3) Gross Negligence/Malfeasance, (state law counts), (4) five counts under Civil RICO, and (5) Civil Conspiracy, (state law claim), as well as a prayer for injunctive relief. Plaintiff has demonstrated that this Court

has jurisdiction over the RICO counts <u>FN3</u> and supplemental jurisdiction over the state law claims.<u>FN4</u> I will thus reach the merits of the motions before me.

FN3. <u>28 U.S.C. § 1331</u>.

FN4. <u>28 U.S.C. § 1367</u>. Plaintiff claims diversity jurisdiction. The documents of record do not allow this Court to presume diversity jurisdiction exists.

## II. Standard

<u>Rule 12 (b) of the Federal Rules of Civil Procedure</u> provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under <u>Rule 12(b)(6)</u>, a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See* <u>*Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)</u>. Because the Federal Rules of Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P. 8(a)</u>.

A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)</u>. In considering a motion to dismiss, the proper inquiry is not whether a plaintiff will ultimately prevail, but rather whether a plaintiff is permitted to offer evidence to support its claims. *See* <u>*Children's Seashore House v. Waldman,* 197 F.3d 654, 658 (3d Cir.1999)</u>, *cert. denied,* <u>530 U.S. 1275, 120 S.Ct. 2742, 147 L.Ed.2d 1006 (2000)</u> (quoting <u>*Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)</u>). The moving party bears the burden of showing that the non-moving party has failed to state a claim for which relief can be granted. *See* <u>*Gould Elec. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir.2000)</u>. While all facts in the complaint must be accepted as true, this Court "need not accept as true unsupported conclusions and unwarranted inferences." <u>*Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 184 (3d Cir.2000)</u>, *cert. denied,* <u>532 U.S. 1038, 121 S.Ct. 2000, 149 L.Ed.2d 1003 (2001)</u> (citations omitted).

*\*2* This Court is mindful of the fact that *pro se* complaints are to be construed liberally to afford litigants all reasonable latitude. *See* <u>*Haines v. Kerner,* 404 U.S. 519, 520-21, 91 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)</u>. This leniency does not excuse a *pro se* plaintiff from conforming to the rules of civil procedure or from pleading the essential elements of his claim. *See* <u>*Floyd v. Brown & Williamson Tobacco Corp.,* 159 F.Supp.2d 823, 832 (E.D.Pa.2001)</u>; <u>*Smith v. Social Sec. Admin.,* 54 F.Supp.2d 451, 454 (E.D.Pa.1999)</u>.

## III. Analysis

### A. Fraud: Count One

Plaintiff's first count is one for fraud which, under Pennsylvania law, contains the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." <u>*Gibbs v. Ernst,* 538 Pa. 193, 207-08, 647 A.2d 882, 889 (1994)</u> (citing W. Page Keaton, *Prosser and Keaton on the Law of Torts* § 105 (5th ed.1984)). Under

Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." While the "date, place or time" of the alleged fraud need not be plead, plaintiffs must use some means for " 'inject [ing] precision and some measure of substantiation' " into the allegations. *Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network*, No. Civ. A. 99-4653, 2001 WL 41143 (E.D.Pa. Jan.18, 2001) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 789 (3d Cir.1984)). The complaint must assert who made the fraudulent statement and who received the information, particularly when there is no indication that such information is in the exclusive control of the defendant. *See F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994) (quoting *Saporito v. Combustion Eng'g Inc.,* 843 F.2d 666, 675 (3d Cir.1988), *cert. granted and judgment vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989)). Conclusory allegations fail to satisfy the particularity requirement. *See Lujan v. Mansmann,* 956 F.Supp. 1218, 1228 (E.D.Pa.1997) (citing *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989)). *Pro se* litigants are not relieved from the burdens imposed under Rule 9. *See Floyd,* 159 F.Supp.2d at 832.

The complaint before me provides:

*\*3* 14. Pursuant to the Agreement and representation of the Bank at the time of opening the accounts at the Bank and obtaining a mortgage from the Bank, the Bank was not able to disclose financial information about the Plaintiff without the consent of the Plaintiff or an order of the Court directing the disclosure of the information.

15. Defendants Bank and/or John Does initiated a scheme whereby the financial information of the Plaintiff would be disclosed to third parties.

16. Defendant Bank and/or other John Does made false representations the [sic] Plaintiff, or failed to properly disclose relevant information to the Plaintiff, including, but not limited to, statements as to the disclosure of financial information about the Plaintiff and his business entities, with the intent that said parties rely upon the representations.

(Compl.¶¶ 15-16.)

A liberal reading of the complaint supports an inference that plaintiff is basing his fraud claim on the theory that the Bank fraudulently represented to him that it would not disclose information regarding his business with First Union, that the Bank made some disclosure, and this alleged misconduct harmed him. Even if his theory were viable, the complaint has fatal defects. Morris does not allege what information was disclosed, who precisely made the alleged disclosure, or who exactly received the information. He merely refers to John Does and unnamed third parties. The complaint is also flawed in that it contains only conclusory statements with respect to the causation element of a claim for fraud. As explained above, plaintiff is required to plead that "the resulting injury was proximately caused by the reliance." *Gibbs,* 538 Pa. at 207-08, 647 A.2d at 889. There is no causal connection between the alleged fraudulent disclosures to unnamed persons and the ensuing foreclose on plaintiff's mortgage. Reading in such a connection would be counter to even the lenient inferences afforded to *pro se* litigants. I therefore conclude that the claim for fraud was not adequately plead and will be dismissed.

### B. Fiduciary Duty: Count Two

Plaintiff's second count is for breach of fiduciary duty. Under Pennsylvania law, a fiduciary duty arises from a special relationship of trust in which there is "confidence reposed by one side [and] domination and influence exercised by the other." *Polymer*

*Dynamics, Inc. v. Bayer Corp.*, No. Civ. A. 99-4040, 2000 WL 1146622, at *7 (E.D.Pa. Aug.14, 2000) (citation omitted). This confidential relationship exists when " 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other.' " *Commonwealth of Pa. Dep't of Transp. v. E-Z Parks, Inc.*, 153 Pa. Commw. 258, 268, 620 A.2d 712, 717 (1993) (quoting *Estate of Clark*, 467 Pa. 628, 635, 359 A.2d 777, 781 (1976)). Under Pennsylvania law, a lender is not a fiduciary of the borrower, *see Smith v. Berg*, No. Civ. A. 99-2133, 2000 WL 365949, at *5 (E.D.Pa. Apr.10, 2000), *aff'd*, 247 F.2d 532 (3d Cir.2001) (collecting cases), nor does a bank/customer relationship give rise to a fiduciary relationship, *see Waye v. Commonwealth Bank*, 846 F.Supp. 321, 325 (M.D.Pa.1994). I therefore conclude that the claim for breach of fiduciary duty cannot survive.

### C. Gross Negligence/Malfeasance: Count Three

*\*4* Morris next asserts a cause of action for gross negligence and malfeasance. While the Pennsylvania courts acknowledge differing standards of care, the courts do not recognize degrees of negligence. *See Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 462 (3d Cir.1990); *Floyd*, 159 F.Supp.2d at 828; *Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 192, 484 A.2d 744, 749 (1984). Accordingly, this Court construes the complaint as asserting a claim for negligence and malfeasance. Under Pennsylvania law, where, as here, a negligence claim closely resembles and arises out of a breach of contract, a court must determine whether there was an improper performance of a contractual obligation (malfeasance), or a mere failure to perform (nonfeasance); only the former gives rise to an action in tort. *See Kearns v. Minnesota Mut. Life Ins. Co.*, 75 F.Supp.2d 413, 421 (E.D.Pa.1999) (collecting cases).

In the instant action, it appears that plaintiff wishes to proceed on the theory that contrary to his agreement with First Union, the Bank disclosed certain information thereby improperly performing its contractual obligation to not make such disclosures. Assuming this theory is viable, the problem with the complaint, as discussed above, is that there is an utter disconnect between the alleged misconduct and the fact that the Bank foreclosed on the mortgage it held with plaintiff. In order to establish a claim for negligence, the plaintiff must show that defendant owed a duty of care; the defendant breached that duty; such breach caused an injury to the plaintiff; and that the plaintiff suffered an actual loss or damage. *See Martin v. Evans*, 551 Pa. 496, 502, 711 A.2d 458, 461 (1998). Demonstrating a breach of the duty of care and the occurrence of the injury is insufficient; the plaintiff must also prove "the vitally important link of causation." *Cuthbert v. City of Philadelphia*, 417 Pa. 610, 614, 209 A.2d 261, 263 (1965) (collecting cases; cited in *Skipworth v. Lead Indus. Ass'n, Inc., NL*, 547 Pa. 224, 231, 690 A.2d 169, 172 (1997); *Taylor v. Jackson*, 164 Pa. Commw. 482, 490, 643 A.2d 771, 775 (1994)). *See also Hamil v. Bashline*, 481 Pa. 256, 264, 392 A.2d 1280, 1284 (1978). Even if the Court were to agree that Morris adequately plead a breach of duty by alleging that the Bank disclosed certain information and that Morris adequately plead injury by alleging that his mortgage was foreclosed, there are simply no facts from which it can be inferred that the alleged disclosure caused the foreclosure. I therefore conclude that the count for negligence and malfeasance will be dismissed.

### D. Civil Rico: Counts Four, Five, Six, Seven and Eight

*\*5* The RICO statute authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Section 1962 contains four separate subsections each of which address a different problem. *See*

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir.1991). As explained by the Court of Appeals:

Section 1962(a) prohibits 'any person who has received any income derived ... from a pattern of racketeering activity' from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise 'through a pattern of racketeering activity.' Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from 'conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity.' Finally, section 1962(d) prohibits any person from 'conspir[ing] to violate any of the provisions of subsections (a), (b), or (c).'

*Id.* (alterations in original).

Under section 1962(a), a plaintiff must allege that he suffered an injury specifically from the use or investment of income in the named enterprise. *See id.; Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir.1993); *Moore v. Reliance Standard Life Ins. Co.,* No. Civ. A. 98-4610, 1999 WL 299577, at *3 (E.D.Pa. May 10, 1999); *Lim v. New York Life Ins. Co.,* No. C.A. 97-1972, 1998 WL 54331, at *3 (E.D.Pa. Jan.13, 1998). Morris links his injury to the alleged unlawful disclosure of certain account information to unnamed third parties. There is no allegation linking his injuries to the use or investment of income in any named enterprise. Accordingly, I will dismiss the claim asserted under section 1962(a).

Section 1962(b) requires a plaintiff to allege that he suffered an injury from the defendant's acquisition or control of an interest in a RICO enterprise. *See Lightning Lube,* 4 F.3d at 1190; *Moore,* 1999 WL 299577, at *3. For example, such an injury occurs when "the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Lightning Lube,* 4 F.3d at 1190 (citation omitted). The plaintiff must also show that the interest or control of the RICO enterprise by the person resulted from the racketeering. *See id.* It is insufficient to merely demonstrate that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. *See id.* Rather, the plaintiff must firmly show a "nexus between the interest and the alleged racketeering activities." *See id.*

The complaint before this Court fails to make such allegations. Morris essentially asserts that his injury is the foreclosure of the mortgage by the Bank that held the mortgage, and that the misconduct involved the Bank and unidentified persons making certain disclosures to unidentified third parties. Even a liberal reading of the complaint fails to allow a reasonable inference that Morris has plead facts that support his claim that First Union acquired or controlled a racketeering enterprise that injured Morris or that any acquisition or control was a result of racketeering. I will therefore dismiss the claim asserted under section 1962(b).

*6 As explained, section 1962(c) prohibits *persons* who are employed by or associated with an *enterprise* from conducting the enterprise's affairs through a pattern of racketeering. Liability rests upon the culpable person, not the enterprise. *See Dugan v. Bell Tel. of Pa.,* 876 F.Supp. 713, 719 (W.D.Pa.1994). The plaintiff must assert that the person and the enterprise are separate and distinct. *Lightning Lube,* 4 F.3d at 1191; *Metcalf v. Painewebber Inc.,* 886 F.Supp. 503, 511 (W.D.Pa.1995), aff'd, 79 F.3d 1138 (3d Cir.1996); *Dugan,* 876 F.Supp. at 719. A corporation cannot be held liable under section 1962(c) unless it engages in activity as a "person" in a separate enterprise. *See Oglesby v. Saint-Gobain Corp.,* No. Civ. A. 97-4038, 1997 WL 570925, at * (E.D.Pa. Sept.4, 1997). Where persons are employees of the corporation, the plaintiff must

assert that such persons acted outside the scope of their employment. *See Metcalf, 886 F.Supp. at 513-14*. Morris identifies no entity separate and distinct from First Union. Rather, he asserts that unidentified John Does, presumably employees of the Bank, made unauthorized disclosures to third parties. There is also no allegation that these unnamed persons acted for their own personal pursuit. Accordingly, I conclude that this claim must also be dismissed.

Liability under section 1962(d) is dependent on a conspiracy to violate one of the other 1962 subsections; thus, where, as here, a plaintiff has failed to assert a valid claim under any of those subsections, the plaintiff cannot pursue a claim under 1962(d). *See Lightning Lube, 4 F.3d at 1191*.

### E. Civil Conspiracy: Count Nine

Plaintiff's final claim is one for civil conspiracy, in which he alleges that the Bank and John Does conspired against hin. (Compl.¶¶ 77-78.) Under Pennsylvania law, a civil conspiracy occurs when two or more commit an unlawful act or commit an otherwise lawful act by unlawful means; some overt act is taken in furtherance of the conspiracy, and the plaintiff experiences a legal harm. *See Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc., 931 F.Supp. 377, 387 (E.D.Pa.1996)*. In general, under Pennsylvania law, a corporation cannot conspire with itself or with its agents or employees when such agents or employees act solely for the corporation and not on their own behalf. *See Tyler v. O'Neill, 994 F.Supp. 603, 613 (E.D.Pa.1998), aff'd, 189 F.3d 465 (3d Cir.1999); United Nat'l Ins. Co. v. Equip. Ins. Managers, Nos. Civ. A. 95-0116, 95-2892, 1995 WL 631709, at *6 (E.D.Pa. Oct.27, 1995); Doe v. Kohn, Nast & Graf, P.C., 862 F.Supp. 1310, 1328 (E.D.Pa.1994)*. The exception to this rule arises where the agent or employee acts in pursuit for personal reasons, and one of the parties to the conspiracy is not an agent or employee of the corporation. *See Tyler, 994 F.Supp. at 613; United National, 1995 WL 631709, at *6; Kohn, Nast & Graf, 862 F.Supp. at 1328*.

Here, Morris asserts that the Bank is a conspirator, (Compl.¶ 77), which as explained is not allowed by law to support this claim. The complaint also fails allege the identities of John Does beyond providing that they are "unknown individuals, partnerships, corporations, or other business entities." ( *Id.* ¶ 3.) Plaintiff asserts that the "Bank never disclosed that individuals working within the Bank could and/or would disclose information concerning the various accounts and mortgage of the Plaintiff to third parties." ( *Id.* ¶ 8.) He further asserts, in the next paragraph. that "Defendant Bank and John Does fraudulently disclosed certain information to third parties about the various bank accounts...." ( *Id.* ¶ 9.) The only reasonable inference is that the John Does who allegedly disclosed certain information were employees of First Union. Thus, the complaint is flawed in that it does not allege that these individuals disclosed information for their own personal benefit. In addition, civil conspiracy requires an underlying tortious act, *see Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir.2000)*, which plaintiff does not plead in his compliant. For these reasons, I conclude that the claim for civil conspiracy will be dismissed.

*\*7 F. Leave to Amend*

Under Federal Rule of Civil Procedure 15(a), "leave [to amend] shall be freely given when justice so requires." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)* (alteration in original). Leave to amend may be denied on grounds of undue delay, bad faith, dilatory motive, prejudice and futility. *See id.* Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted, under the same standard of legal sufficiency as Rule 12(b)(6). *See id.* In

addition to the fact that plaintiff has not requested leave to amend, I conclude that leave to amend will not be granted *sua sponte* because it would be an exercise in futility. For the reasons stated above, the allegations of the complaint as to civil RICO are fatally defective in that the allegations fail to support a cause of action. As well, there is no suggestion that there is further evidence available to support a civil RICO action. Having decided to dismiss the RICO counts, this Court declines to retain supplemental jurisdiction over the state law claims.

## IV. Conclusion

The motions to dismiss filed by defendant will be granted and the complaint will be dismissed with prejudice as to the civil RICO counts as plaintiff has failed to meet his pleading requirements under the Federal Rules of Civil Procedure. The state law counts will be dismissed without prejudice. An appropriate Order follows.

## *ORDER*

AND NOW, this 14th day of January, 2001, upon consideration of the two unopposed motions to dismiss filed on behalf of defendant First Union National Bank, (Document Nos. 12 and 13), pursuant to Federal Rule of Civil Procedure 12(b)(6), and having concluded for the reasons set forth in the foregoing memorandum that plaintiff has failed to state a cause of action as to the civil RICO counts, and that it would be futile to *sua sponte* grant plaintiff leave to amend the complaint, it is hereby ORDERED that the motions are GRANTED and the civil RICO counts of the complaint are DISMISSED with prejudice and the state law counts are DISMISSED without prejudice.

This is a final order.

United States District Court, N.D. Texas, Dallas Division.
SOUTHWEST MATERIALS HANDLING COMPANY, Plaintiff,
v.
NISSAN MOTOR CO., LTD., et al., Defendants.
No. CIV.A.3:98-CV-2367-X.
Nov. 3, 2000.

MEMORANDUM OPINION AND ORDER

KENDALL, District J.

*1 Defendant Nissan Motor Co. Ltd ("Defendant NML") and Defendant Nissan Forklift Corp., N.A ("Defendant NFC")(collectively, "Defendants") have filed their Motions for Summary Judgment. After review of the motions, responses and replies, for the reasons set forth below, it is this Court's opinion that the motions should be, and they hereby are GRANTED. Plaintiff's Cross-Motion to Re-Open Discovery and Motion to Submit Newly Received Evidence in Opposition to Motion for Summary Judgment are DENIED.

I. FACTUAL BACKGROUND

While this lawsuit involves numerous causes of action, the core events all relate to an alleged breach of contract. Defendant NFC and the Plaintiff entered into a Dealer Agreement (the "Agreement") on January 1, 1994. Under the Agreement. Plaintiff became an Authorized Dealer, with nonexclusive rights to market and resell Defendant NFC's products and nonexclusive privileges to identify itself as an Authorized Dealer. Plaintiff also assumed responsibilities for marketing, repairing and otherwise servicing Defendant NFC's products.

Under the Agreement, Plaintiff was assigned an Area of Primary Responsibility ("APR"), within which it was to actively market and promote Defendant's products. The Agreement required dealers who sold products in another dealer's APR to comply with Defendant NFC's policies, as modified from time to time, governing cross-compensation between the parties. On or about July 14, 1998, Defendant NFC notified Plaintiff that it was establishing a second dealership in Plaintiff's APR with Shannon, a local, non-party dealer. Plaintiff alleges that this decision constituted a termination of the franchise, which along Defendant NFC's subsequent failure to pay cross-compensation breached the Agreement. These two complaints give rise to the flood of causes of action presented to this Court.

Plaintiff filed its Complaint and Demand for Jury Trial on October 8. On October 16, 1998, Defendants each filed a Motion to Dismiss. On July 23, 1999, this Court granted the Motions to Dismiss in part, dismissing all antitrust causes of action (Counts 5, 11, 12, 13, 14 and 17). The Court referred this case to mediation on March 30, 1999, which ultimately failed on December 15, 1999, leading to Defendant's respective Motions for Summary Judgment, each filed on January 19, 2000.

Defendants challenge all of Plaintiff's remaining Counts, arguing principally that the underlying Agreement unambiguously provides Plaintiff only with nonexclusive rights and privileges. Given these limited rights and privileges. Defendants argue that no breach of contract has occurred. Against the other counts, Defendants argue that Plaintiff's claims are either not cognizable, not supported by summary judgment evidence, or simply not available under Texas or Illinois law.

Defendant NML, the corporate parent of Defendant NFC, has filed its own motion for summary judgment. Its foundational argument is that no privity of contract exists between itself and the Plaintiff, and thus, it cannot be held directly or indirectly liable for any claims founded upon a breach of contract. Without addressing the merits of this reasoning, this Court concludes that when the unambiguous Agreement forecloses a breach of contract claim against Defendant NFC, it also forecloses parallel claims against the more remote corporate parent. In addition to its response, Plaintiff has filed a Cross-Motion for the Reopening of Discovery and a Motion to Submit Newly Received Evidence in Opposition to Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARDS

**\*2** Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the summary judgment record demonstrates that no genuine issue of material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. _Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)._ Once the movant has met its burden, the burden shifts to the nonmovant to establish with significant probative evidence that a material issue of fact exists. _Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Tex., 20 F.3d 1362, 1371 (5th Cir.1994)._ A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)._ The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue exists for trial. _Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994)._ The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." _Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)._

## III. ANALYSIS

Plaintiff has pled, all told, _thirty-one_ separate counts against Defendants. These counts are thrown against the wall, in the apparent hope that some will stick. None do. The Court has made its best efforts to interpret some of the more abstract counts; all claims, except the previously dismissed antitrust ones, are discussed below. Many of the claims simply shrivel on the vine, with insufficient factual allegation or legal basis to survive Defendants' motions. A few truly push the Rule 11 envelope. The length of this opinion is the necessary, but wasteful consequence of such drive-by pleading.

### A. Breach of Contract and Related Claims

### i. Counts 3, 15, 16 and 30: Breach of Contract

Defendants argue that none of Plaintiff's breach of contract claims are legally sufficient to survive summary judgment. Specifically, they contend that the Agreement unambiguously creates a nonexclusive relationship between Plaintiff and Defendant NFC. As a result, although some actions may have affected Plaintiff's bottom line, none independently breach that Agreement. The clear language of the Agreement precludes Count 3; the appointment of another dealer within Plaintiff's APR cannot breach an Agreement that recognized no territorial exclusivity.

In Count 15, Plaintiff complains that Defendant NFC converted one of its accounts into a

national account. Defendant NFC replies that it never represented to Plaintiff that it would not effect that conversion outside a one year grace period. Plaintiff provides no summary judgment to modifies the Agreement's unambiguous disclaimer of any agreements other than those incorporated within itself. In the absence of this specific contrary evidence, Defendants are entitled to summary judgment on Count 15.

*3 This Court construes Count 30 as a general breach of contract claim, where Plaintiff complains of Defendant NFC's failure of its duty to support Plaintiff's marketing efforts. Plaintiff has failed, thus far, to adduce any summary judgment evidence which would confirm or even suggest the existence of this broad, implied duty. Absent any genuine issue over the existence of the duty, this Court will respect the plain meaning of the Agreement. Defendants are entitled to summary judgment on Count 30.

The last explicit contractual claim is found in Count 16, Plaintiff's claim that it was entitled to cross-compensation, which Defendant NFC subsequently failed to pay, for Shannon's sales within its APR. In support of this claim, Plaintiff submits evidence on Defendant NFC's cross-compensation policy, as it existed on July 22, 2000.

Without rendering a finding on the admissibility of this evidence, this Court nonetheless finds that it creates no genuine issue of material fact. Plaintiff has not provided any summary judgment evidence showing Defendant's cross-compensation policy as it existed during the Agreement, from which this Court could construe a strict, contemporaneous policy of paying cross-compensation. Without this showing, Plaintiff cannot overcome Defendant NFC's argument that at best, a third-party would have to pay cross-compensation, and that Defendant NFC was never itself contractually obligated to pay. The existing evidence provides the Court with no basis for reinterpreting the unambiguous meaning of the Agreement. Accordingly, on Count 16, Defendants are entitled to summary judgment.


### ii. Counts 6, 7, 10, 20, 21 and 22: Good Faith and Fair Dealing Claims

With respect to Plaintiff's six counts alleging a breach of the duty of good faith and fair dealing, Defendants respond that Texas and Illinois only recognize the duty in the execution of a contract, not in its surrounding negotiations. Furthermore, they argue that Plaintiff's failure to bargain for an exclusive APR does not, by necessity, transform the events into a breach of good faith and fair dealing. Defendant NFC asserts that it acted within its contractual rights, and thus, such acts could not be construed as bad faith. Plaintiff rebuts none of these arguments.

Texas courts recognize an independent cause of action for the breach of the duty of good faith and fair dealing only where a "special relationship" exists between the parties, one where there is substantially unequal bargaining power. "The 'special relationship' cause of action in tort for breach of the duty of good faith and fair dealing, however, does not extend to ordinary commercial contractual relationships such as the supplier-distributor relationship." See _McClendon v. Ingersoll-Rand Co., 757 S.W.2d 816, 819-20 (Tex.App.-Houston [14th Dist.] 1988), rev'd on other grounds, 779 S.W.2d 69 (Tex.1989)._ Absent some inequality, such as exists in the insurer's control over the claims process, Texas courts default to the general contractual duty of good faith in a commercial setting prescribed by the _Uniform Commercial Code, § Tex.Bus. & Com.Code Ann. 1.203_ (Vernon 1968), which provides that "[e]very contract or duty within this title imposes an obligation of good faith in its _performance or enforcement._" See _La Sara Grain Co. v. First National Bank of Mercedes, 673 S.W.2d 558, 563 (Tex.1984)_(emphasis added). Likewise, under Illinois law, the covenant of good faith and fair dealing does not create independent duties for contracting parties. _Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir .1992)._ The covenant only serves to "guide the

construction of the explicit terms in the agreement." *Id.*

*\*4* Plaintiff has alleged many facts which give the Court a basis to understand its disappointment, which reveal perhaps lost opportunities, but none of these facts provide any basis for finding that Defendant NFC either did not perform its contractual duties in good faith or acted outside of its contractual rights. More importantly, none of the allegations alters the existing judicial precedents so as to create a duty of good faith and fair dealing during the contractual negotiations. Defendants are entitled to summary judgment on these six counts.


### iii. Counts 18 and 19: Texas DTPA Claims

Defendants argue, against Counts 18 and 19, that Defendant NFC's contractually permitted behavior cannot violate the DTPA. It is well-settled law in Texas, and in the Fifth Circuit, that a mere "allegation of breach of contract-without more-does not constitute a false, misleading, or deceptive action as would violate section 17.46 of the DTPA." *Dura-Wood Treating Co. v Century 7 Forest Indus., Inc.* 675 F.2d 745, 755 (5th Cir.1982). This Court has already found no breach of contract, and Plaintiffs provides no summary judgment evidence illustrative of deception by the Defendants. Accordingly, Defendants are entitled to summary judgment with respect to Counts 18 and 19.


### iv. Counts 8, 9, 27 and 29: Residual Contractual Claims

Plaintiff, in Count 8 claims that Defendant NFC's acts lead to its unfair detriment. A basic Westlaw search reveals that while this phrase exists in legal parlance, it is neither a cause of action nor a measure of damages, and this Court cannot sustain it as either. Count 9, too, claims unfair detriment, but it adds a claim of unjust enrichment to Defendant NFC. Defendants reply that unjust enrichment is an equitable cause of action, unavailable when the terms of the contract expressly permit the objectionable acts.

Under Texas law, "the fact that a party to a contract has made a profit is an insufficient ground on which to order restitution on a theory of unjust enrichment." *Burlington Northern R.R. v. Southwestern Elec. Power Co., 925 S.W.2d 92, 97 (Tex.App-Texarkana.1996, reh.overr.)* "The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." *Id.* Defendant NFC has produced summary judgment evidence showing that its behavior was contractually permissible. In the absence of countervailing evidence from the Plaintiff, Defendants are entitled to summary judgment on this count. Nonetheless, even assuming the acts were not contractually permissible, Plaintiff provides no summary judgment evidence showing that profits rightfully due it transferred instead to Defendant NFC, or for that matter, any other party.

The Court has distilled the virtual hornbook presented in Count 27 into a claim for intentional infliction of emotional distress. Assuming, *arguendo,* that Defendants committed a breach of contract, this claim must still fall, as Plaintiff has failed to substantiate, intimate, or even to allege any actual and severe emotional distress suffered by the parties. Under Texas law, intentional infliction of emotional distress consists of the following elements: (1) intentional or reckless acts by the defendant, (2) which are extreme and outrageous; (3) causing the plaintiff's emotional distress; (4) which distress is of a severe nature. *Brewerton v. Dalrymple,* 997 S.W.2d 212, 215 (Tex 1999) (citing *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex 1993)). Extreme and outrageous conduct is the exception, rather than the rule; it must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." '

*Mattix-Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996) (quoting *Twyman,* 855 S.W.2d at 621).

**\*5** First, Plaintiff's reconstructed claim fails to allege any facts which would establish these elements. This Court finds that none of the events in question meet the threshold of "extreme and outrageous," so as to trigger tort liability. At worst, Defendant NFC behaved in a way permitted under the Agreement, and Plaintiff shows this Court no basis for finding such permissible behavior both extreme and outrageous as a matter of law. Defendants are entitled to summary judgment on Count 27.

Finally, in Count 29, Plaintiff states a nebulous claim for Defendants' unreasonable refusal to approve potential buyers of Plaintiff's business. Absent from the summary judgment evidence, however, are any facts showing that 1) Plaintiff intended to sell its business; 2) Plaintiff found sellers; 3) this sale required Defendant NFC's approval; 4) Defendant unreasonably denied this approval; and 5) Plaintiff has yet to sell its business. Such a factual gap would very likely justify a dismissal under Rule 12(b)(6), and this Court finds that Plaintiffs have done nothing more than make a bare legal assertion. Defendants are entitled to summary judgment on Count 29.

### B. Counts 1, 2 and 4: Violations of the Illinois Franchise Disclosure Act

Defendants argue that the relationship between Plaintiff and Defendant NFC is statutorily exempt from the application of the Illinois Franchise Disclosure Act (IFDA). The IFDA protects parties that satisfy certain criteria, among them, 1) location in Illinois, and 2) payment of a fee which meets the statutory definition of a "franchise fee." *Ill. Admin. Code § 200.108.* Defendants specifically argue that Plaintiff satisfies neither condition, having never (by its own pleading) been located in Illinois, nor paid a fee (monetary or in kind) which falls into the regulated categories. Defendants add that Plaintiff's initial inventory investment was not "excessive," as would be needed for the IFDA to apply. Plaintiff rebuts neither argument, and the existing summary judgment evidence leaves no genuine issue over Defendant's claim. As this relationship does not qualify as an Illinois franchise, Plaintiff lacks standing to bring an action under the IFDA. Thus, this Court cannot recognize these claims, and Defendants are entitled to summary judgment on Counts 1, 2 and 4.

### C. Count 24: Texas Business Opportunity Act Claims

Defendant, by way of deposition testimony from Plaintiff's CEO, provides summary judgment evidence that Plaintiff has sold and leased, and has been free to sell and lease, equipment, products, and supplies from other manufacturers and competitors. Plaintiff provides no contrary evidence or argument. The statutory language of the Texas Business Opportunity Act exempts certain transactions from its application, including "a sale or lease to a business enterprise that also sells or leases equipment, products, and supplies or performed services...that are not supplied by the seller..." *Tex. Bus. & Com.Code § 41.004(b)(5).* This Court is not free to ignore the explicit statutory boundaries set by the Texas Legislature. As the Act does not apply to the Agreement, Defendants are entitled to summary judgment on Count 24.

### D. Count 26: Spoliation of Evidence

**\*6** Defendants argue that spoliation of evidence does not exist as an independent cause of action under Texas law. In *Garcia v. Columbia Medical Center of Sherman,* 996 F.Supp 617 (E.D.Tex.1998), the district court considered recognizing spoliation as a

cause of action. The court concluded that since the Texas Supreme Court had not yet declared spoliation of evidence to be an independent cause of action, it would similarly decline. Without rendering a finding on the admissibility of the evidence submitted with and after Plaintiff's reply, this Court finds that Defendants are entitled to summary judgment with respect to Count 26, as no facts, presented or imaginable, would justify this federal court's creation of a cause of action yet unauthorized by Texas law.

### E. Count 4: Federal Trade Commission Act Claims

Defendants argue that the Federal Trade Commission Act (FTCA) claims are not legally cognizable, since the Act does not provide a private cause of action. In *Morrison v. Back Yard Burgers, Inc.,* 91 F.3d 1184, 1187 (8th Cir.1996), the appeals court, in reviewing a grant of summary judgment against the Plaintiff, held not only that the FTCA did not recognize a private cause of action, but further, that lack of a private cause of action precluded Plaintiff from pleading a violation of the FTCA as an element in its state common law fraud claim. This Court agrees with the *Morrison* court. Plaintiff's claim of an FTCA violation by Defendant NFC is not legally cognizable, and thus, Defendants are entitled to summary judgment on Count 4.

### F. Counts 23, 25, 28 and 31: Miscellaneous

To the best of its ability, this Court has reviewed the remaining counts to discern if any viable causes of action exist. In Count 23, Plaintiff speaks of how the appointment of the second dealer would enable that dealer to "enjoy a free ride on [its] marketing efforts without compensating for same." Defendant has argued, and this Court agrees, that Plaintiff has failed to state a cognizable claim. Neither Texas law nor Illinois law recognize 'free riding' as a cause of action. With respect to possibly construing these counts as either breach of contract or cross-compensation claims, this Court has already resolved such issues.

Likewise, Count 25 alleges "willful disregard" by the Defendants. While this legal term of art describes a state of mind, it has no independent legal significance as a self-sufficient cause of action. This Court cannot find a viable claim in Count 25. Count 28 catalogues the damages for which relief is sought, but the list which contains no independent cause of action. Defendants are therefore entitled to summary judgment on both of these non-claims.

Finally, this Court gets to meet and greet John Doe, the alleged joint participant in a civil conspiracy to breach the Agreement. (Count 31). Under Texas law, the elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey,* 652 S.W.2d at 934; *Futerfas,* 707 S.W.2d at 156. Here, once again, Plaintiff has failed to elaborate the elements of its nebulous claim, or to provide summary judgment evidence showing any genuine issues of material fact. Having had more than a year to produce the other character(s) in the alleged conspiracy, Plaintiff has simply failed to do so. This Court is not in the position of channeling or divining potential co-conspirators who are presently as tangible as Santa Claus, the Easter bunny or the Tooth Fairy. Plaintiff also offers no summary judgment evidence which provide the third and fourth elements. With only two out of five necessary legs developed so far, this claim cannot stand, and Defendants are entitled to summary judgment on Count 30.

### IV. CONCLUSION

**\*7** It may well be that the Plaintiff negotiated a deal that turned out to be, for it, a bad deal. But it is not the function of the Court to tear up valid contracts and through the litigation process, rewrite, for the disappointed party, the contract that it wished it would have executed. A deal is a deal.

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Drnec, hereby certify that on this date, I served on the parties below in the manner indicated, copies of the Compendium of Unreported Cases Cited in Defendant CMS's Response to Plaintiff's Motion to Amend Complaint.

**<u>VIA FIRST CLASS MAIL</u>**
Mr. Thomas R. Miller
#144108
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

<u>          /s/ James E. Drnec          </u>
James E. Drnec